UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| 425 NOTRE DAME, L.L.C. | * | CIVIL ACTION NO. 15-454 |
| | * | SECTION "J" |
| VERSUS | * | JUDGE CARL J. BARBIER |
| | * | DIVISION "4" |
| KOLBE & KOLBE MILLWORK CO., | * | MAGISTRATE JUDGE |
| INC., ET AL | * | KAREN WELLS ROBY |
| | * | |
| * * * * * * * * * * | * | |

### LANDIS CONSTRUCTION CO., L.L.C.'s MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendant, Landis Construction Co., L.L.C., ("Landis"), submits this Memorandum in Support of its Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted, as follows, as Kolbe & Kolbe Millwork Co., Inc. ("Kolbe") cannot be held liable to Plaintiff, 425 Notre Dame, L.L.C. ("Notre Dame") for any acts, omissions or breaches of Landis.

### I.     FACTUAL ALLEGATIONS

This matter arises out of a construction/renovation project in New Orleans, Louisiana. With respect to the project, Landis Construction Co., L.L.C. ("Landis") and 425 Notre Dame, L.L.C. ("Notre Dame" and/or "Owner") entered into an AlA AI02 Standard Form of Agreement Between Owner and Contractor where the basis of the payment was Cost of the Work Plus a Fee with a Guaranteed Maximum Price ("Contract"). Per the Contract, Landis was the General Contractor and its scope of work was to restore and rehabilitate the existing two story building located at 412 Girod Street in New Orleans, Louisiana into an unfinished shell space, build a new two story building next to the 412 Girod Street building with unfinished shell space on the first floor and two finished condo units on the second floor, a pool on the rooftop, a new one story building along Girod Street with the first floor an unfinished shell space, a new eight story

building located at 425 Notre Dame Street in New Orleans, Louisiana, consisting of a lobby and main entrance on the first floor, parking on the first second and third floors, amenities area on the third floor, and 47 finished condo units on floors four through eight (the "Project").

The Contract between Notre Dame and Landis contained an arbitration clause, requiring that any claims arising out of the contract be submitted to mandatory arbitration. The Architect on the project is Rozas Ward Architects ("Rozas Ward" or "Architect"). Despite the Contract Documents calling for an aluminum window system, Rozas Ward insisted that Kolbe windows be installed. Landis did not have any role in the specification or selection of the Kolbe windows.

Landis entered into a Purchase Order with Grand Openings, Inc. ("Grand Openings") for Grand Openings to serve as the windows distributer. Grand Openings then entered into a purchase order with Kolbe for Kolbe to manufacturer the Project windows. Pursuant to the above agreements, Kolbe designed and manufactured the window systems in sections to allow for transport and final assembly on site. Additionally, there are no contracts or agreements whatsoever between Landis and Kolbe with respect to this Project.

In late 2013 / early 2014, Notre Dame received complaints regarding the potential for water intrusion through the Kolbe windows. In response, Notre Dame hired a consultant and performed water intrusion testing which allegedly identified the source of leaks as the Kolbe window itself. As a result, Kolbe returned to the Project site to attempt repairs. Notre Dame rejected the Kolbe repairs and on December 4, 2014, signed Change Order 17 directing Landis to remove and replace the Kolbe windows. Change Order 17 increased Landis' Contract Sum by One Million, Eight Hundred Forty-Six Thousand, Eight Hundred Forty-Nine Dollars and 93/100 ($1,846,849.93). Pursuant to Change Order 17, Landis removed and replaced the Kolbe

windows.  As a result, on February 12, 2015, Notre Dame filed suit against both Kolbe and Grand Openings in this Court.

Notre Dame's complaint against manufacturer Kolbe and distributer Grand Openings alleges that the windows are defective and seeks recovery under Louisiana Civil Code Article 2524 for the implied warranty of fitness and under Louisiana Civil Code Articles 2520 and 2545 for the implied warranty against rehibitory defects. Notre Dame additionally seeks recovery for negligence under LA Civ. Code art. 2315 and under Louisiana's Product Liability Act, La. R.S. 9:2800.51.  Specifically, Notre Dame alleges that "Kolbe's window units were not manufactured in accordance with its own standards or accepted industry standards" and that "Kolbe failed to inject a necessary sealant into the portion of the window that ties the corners of the windows together."[1]

On August 14, 2015, Kolbe filed a Motion for Leave to file a Cross-Claim against Grand Openings and Third-Party Complaint against Landis.  Kolbe's Motion for Leave was granted. Therefore, Kolbe's Cross-Claim against Grand Openings and Third-Party Complaint against Landis was filed on August 17, 2015.  Kolbe's Third-Party Complaint against Landis seeks contribution or indemnity from Landis for its respective liability for the claims discussed above filed by Notre Dame against Kolbe.

In Kolbe's answer, which was filed on May 13, 2015, Kolbe claims via its "Third Defense" that the "damages claimed by Notre Dame against Kolbe, to the extent that any have occurred, are due to the fault, acts, errors and/or omissions of other parties."  In its "Fifth Defense" Kolbe claims that the "damages claimed by Notre Dame were caused by improper installation of the exterior brick façade, and/or the windows and/or the doors; failing to provide

---

[1] See paragraphs 13 and 14 of the Complaint filed by Notre Dame, Record Doc. 1.

adequate sealing or caulking around all windows and/or door openings; improper flashing of the window and/or door openings at the header, jambs and sills; failure to install appropriate backer rod; failure to back wrap and/or overlap the edge of the vapor barrier behind the brick façade; and any other improper installation methods or procedures which are considered industry standards for this type of work."  Also in its answer, Kolbe has acknowledged that "Kolbe did not enter into any contractual or other legal relationship with Notre Dame and/or Landis."[2]

Kolbe concludes that the windows installed by Landis make Landis separately and independently liable as a seller/manufacturer of such windows under Civil Code Article 2520 and 2545, as well as alleging Landis' liability under the implied warranty of fitness under Civil Code Article 2524.  Additionally, Kolbe asserts that Landis is separately and independently liable as a manufacturer under the Louisiana Products Liability Act.

It is undisputed that Kolbe and Landis do not have a contractual relationship.  It is also undisputed that 425 Notre Dame has filed a lawsuit against Kolbe arising out of Kolbe's independent negligent acts.  As a result, it is clear based on Louisiana Law, that Kolbe does not have a right of action against Landis for indemnity and/or contribution.

## II.   LAW AND ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a plaintiff fails "to state a claim upon which relief can be granted."[3]  As the Supreme Court held in *Bell Atlantic Corp. v. Twombly,* the Rule 8 pleading standard does not require "detailed factual allegations," but it does demand more than "labels and conclusions" and a "formulaic recitation of the elements of [the]

---

[2] See Kolbe's Eleventh Defense in its Answer and Demand for Jury filed on 5/13/15, Record Doc. 8.
[3] Fed. R. Civ. P. 12(b)(6).

cause of action."[4]  If the factual allegations are insufficient to rise above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.[5]

When considering a Rule 12(b)(6) motion, a court must accept all reasonable inferences in favor of the plaintiff.[6]  A court may consider the contents of the pleadings, including attachments thereto, as well as the documents attached to the motion to dismiss that are referred to in plaintiff's complaint and are central to his claims.[7]

Federal Rule of Civil Procedure 14 allows a defending party to make a third party complaint against a nonparty if that nonparty "may be liable to it for all or part of the claim against it."  Kolbe "asserts a right of contribution or indemnity from Landis and from Grand Openings, for their respective liability as sellers/manufacturer…"

There is no legal theory under which Kolbe can be held liable for Landis' fault in regards to damages suffered by Notre Dame.  Thus, there is no basis for Kolbe's third-party complaint against Landis, which should be dismissed with prejudice.

---

[4] 550 U.S. 544, 127 S.Ct. 1955, 167, 155 L.Ed.2d 929 (2009) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).
[5] *Id.* at 555; *Jones v. Bock,* 549 U.S. 199, 215, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007); *Carbe v. Lappin,* 492 F.3d 325, 328 & n. 9 (5th Cir.2007).
[6] *Vilma v. Goodell*, CIV.A. 12-1283, 2013 WL 192436 (E.D. La. Jan. 17, 2013) (citing *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232–33 (5th Cir.2009)).
[7] *Morgan v. Swanson,* 659 F. 3d 359, 367 (5th Cir.2011); *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir.2008).

**A. KOLBE CANNOT BE HELD LIABLE TO PLAINTIFF, NOTRE DAME, FOR ANY FAULT OF LANDIS, PURSUANT TO THE 1996 AMENDMENT OF LOUISIANA CIVIL CODE ARTICLE 2323, WHICH APPLIES COMPARATIVE FAULT TO "ANY LAW OR LEGAL DOCTRINE OR THEORY OF LIABILITY, REGARDLESS OF THE BASIS OF LIABILITY."**

Despite Kolbe's acknowledgment in its Eleventh Defense[8] that it does not have a "contractual or other legal relationship with" Landis, Kolbe's Third-Party Demand seeks contribution and indemnity from Landis for Landis' alleged fault for the damages Notre Dame seeks from Kolbe.  Kolbe claims that Landis is at fault for plaintiff, Notre Dame's, damages because the design, fabrication, assembly, and installation of the final window assembly products were defective.  Kolbe seeks redress from Landis under theories of tort, redhibition (LA. C.C. 2520 and 2545), implied warranty of fitness (LA C.C. 2524), and under Louisiana's Product Liabilities Act (LA R.S. 9:2800.53).  Because there is no scenario under which Kolbe can be held liable for Landis' actions, Kolbe's Third-Party Complaint against Landis is without basis and as a matter of law Kolbe does not have a right to contribution and indemnity from Landis.

Comparative fault applies "to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability." La Civ. Code art. 2323(A).  The Louisiana Legislature Amended the Louisiana Civil Code, and more particularly, La. Civ. Code art. 2323, in 1996, and since that time, a defendant cannot be held liable for the acts, omissions, fault, breaches, or otherwise of another party.  La. Civ. Code art. 2323, states as follows:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a

---

[8] See Answer and Demand for Jury on Behalf of Kolbe & Kolbe Millwork Co., Inc. filed 5/13/15, Record Doc 8.

nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.[9]

La. Civ. Code art. 2324, states:

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.[10]

In *Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism*,[11] the Louisiana Supreme Court discussed the effect of the 1996 amendments to articles 2323 and 2324(B).

---

[9] La. Civ. Code art. 2323.
[10] La. Civ. Code art. 2324.

7

Before the amendments were enacted, Louisiana's tort law was focused on fully compensating victims for their injuries. But now, "Louisiana's policy is that each tortfeasor pays only for that portion of the damage he has caused and the tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of that other person."[12]  As a result of this new policy, "the right of contribution among solidary tortfeasors also disappeared since it is no longer necessary in light of the abolishment of solidarity."[13]  Now, the fact finder's job is to "determine the percentage of fault of all persons causing injury to plaintiffs.  If the fact finder concludes that plaintiffs' damages were caused by more than one person, then each joint tortfeasor is only liable for his degree of fault and cannot be held solidarily liable with another tortfeasor for damages attributable to that other tortfeasor's fault."[14]  Louisiana's comparative fault scheme, codified in articles 2323 and 2324 in 1996, applies to "all cases, including products liability, strict liability, and absolute liability cases."[15]

The Louisiana Supreme Court has declared that the current language of Article 2324(B) is clear.[16]  It provides that **in <u>all non-intentional cases</u>, liability for damages caused by two or more persons shall be a joint and divisible obligation**.  The Louisiana Supreme Court further stated that **"[e]ach joint tortfeasor** shall not be liable for more than his degree of fault and **<u>shall not be solidarily liable</u> with any other person** for damages attributable to the fault of that other

---

[11] 2002-0563 (La. 10/15/02), 828 So. 2d 530, 538.
[12] *Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism*, 2002-0563 (La. 10/15/02), 828 So.2d 530, 538.
[13] *Id.*
[14] *Id.* at 539.
[15] *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.,* No. CIV.A. 09-750, 2011 WL 2214936, at *2 (W.D. La. June 6, 2011).
[16] *Dumas* at 537.

person."   Additionally, the Court held that "**This provision abolishes solidarity among non-intentional tortfeasors**, and makes each non-intentional tortfeasor liable only for his own share of the fault, which must be quantified pursuant to Article 2323."

With respect to this matter, there have been absolutely no allegations of intentional torts from Notre Dame, or, for that matter, Kolbe, which would provide for solidary liability between Kolbe and Landis.   The impossibility of solidarity between Kolbe and Landis is even further bolstered by Kolbe's judicial declaration in its Answer that "Kolbe did not enter into a contractual or other legal relationship with Notre Dame and/or Landis."[17]   Therefore, as there are no intentional tort claims present in this matter whatsoever, the possibility of solidarity between Kolbe and Landis regarding every one of Notre Dame's claims, is nonexistent.

Importantly, courts have consistently dismissed claims for tort indemnity when the liability of the would-be indemnitee is not based upon any theory of vicarious or strict liability **which could compel such party to pay a judgment based upon another party's fault** but the claim is, instead, based only upon the would-be indemnitee's active negligent conduct.[18] Additionally, although not binding, perhaps helpful to this Court is the fact that three sitting

---

[17] Answer and Demand for Jury on Behalf of Kolbe & Kolbe Millwork Co., Inc., Record Doc. 8, ELEVENTH DEFENSE.

[18] *See Threlkeld*, 922 F.2d at 268 (holding that an allegation by a client that an attorney was affirmatively negligent in permitting a claim to prescribe could not result in the attorney being cast in judgment for mere technical or passive fault); *Hesse*, 828 So.2d at 691 (affirming dismissal of premises lessor and lessee's indemnity claim against a product manufacturer because the fault alleged against the lessor and lessee was direct and primary rather than constructive or derivative); *see also Hamway*, 838 So.2d at 806 (holding that fault based upon affirmative conduct contributing to a plaintiff's injury was actual fault rather than constructive or derivative fault and such fault precluded a claim for indemnity).

Judges in the Eastern District of Louisiana have performed this same analysis with respect to Motions to Dismiss, resulting in the granting of same.[19]

In *Carter v. Deitz,*[20] a third-party plaintiff alleged that it was entitled to indemnity because its negligence, if any, was only passive in nature as compared to the active negligence of the third-party defendants.  The court of appeal stated: "[t]here is no claim against [the third-party plaintiff] DeLaureal for strict or vicarious liability; indeed, under the facts of this case, such a claim would be impossible.  Rather, the claim against DeLaureal is for simple negligence.  Any recovery by plaintiff against DeLaureal will be based upon DeLaureal's actual negligence, not upon any theoretical or constructive liability.   The question of whether DeLaureal's negligence, if any, was active or passive might have some bearing upon the percentage of fault attributable to DeLaureal, but it is not relevant to the issue of indemnity.   Indemnity is not available to a party who is actually negligent.[21]

A review of the Complaint filed by Notre Dame reveals that it is asserting claims against Kolbe as a result of Kolbe's negligence.  Specifically, paragraph 13 of the Complaint states, "Kolbe's window units were not manufactured in accordance with its own standards or accepted industry standards."   Paragraph 14 alleges "[i]n particular, Kolbe failed to inject a necessary sealant into the portion of the window that ties the corners of the windows together."

---

[19] See Judge Lance M. Africk's opinion in *Lombard v. New Orleans Naval Support Activity*, No. CIV.A.03-3020, 2004 WL 2988483, (E.D. La. Dec. 10, 2004); See also Judge Jane Triche Milazzo's opinion in *Nat'l R.R. Passenger Corp. v. Textron, Inc.*, No. CIV. A. 11-1507, 2013 WL 139809, (E.D. La. Jan. 10, 2013); See also Helen G. Berrigan's opinion in *Snyder v. Asercion*, No. CIV.A. 13-4752, 2013 WL 6004052, (E.D. La. Nov. 13, 2013).

[20] 505 So.2d 106 (La. App. 4th Cir.1987).

[21] *Id.* at 108-09. See also, *Appalachian Corporation, supra* at 541; 109 *Dupree v. Pechinay St. Gobain Co.*, 369 So.2d 1075 (La.App. 1st Cir. 1979), *writ denied,* 371 So.2d 1341 (La.1979); *Joiner v. Diamond M. Drilling Co.*, 688 F.2d 256 (5th Cir.1982).

While Kolbe claims that Landis is at fault for plaintiff Notre Dame's damages because the design, fabrication, assembly, and installation of the final window assembly products were defective, comparative fault applies to each theory under which Kolbe seeks to hold Landis liable. As discussed in *Dumas,* article 2323's comparative fault scheme clearly applies to tort claims.  Thus, Kolbe cannot be held liable for Landis' fault under theories of tort.[22]  As a result, Kolbe will only be responsible to Notre Dame for damages caused by Kolbe's actions.

### B. LANDIS CANNOT OWE CONTRIBUTION OR INDEMNITY TO KOLBE FOR THE CLAIMS ASSERTED BY NOTRE DAME AGAINST KOLBE.

None of the obligations allegedly owed by Kolbe are solidary with obligations Kolbe asserts against Landis, as discussed hereinabove; therefore, Kolbe cannot seek contribution or indemnity from Landis.

### 1.  No Right to Contribution.

A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third-party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff.[23]

In *Hamway v. Braud*, a customer obtained a judgment against the operator of a transmission shop for damage to his vehicle's upholstery when the operator's employees placed transmission parts inside vehicle.[24]  The operator then brought suit against the towing service for

---

[22] See *Dumas*, 828 So.2d at 539.
[23] La. Civ. Code Ann. art. 1805.
[24] 2001-2364 (La. App. 1 Cir. 11/8/02), 838 So.2d 803 (La. Ct. App. 2002).

indemnification and contribution. The court of appeal affirmed the trial court's dismissal of the contribution and indemnity claims. The court noted the following:

> The substantive basis for the right to claim contribution is subrogation to the plaintiff's rights against the remaining tortfeasors. Contribution permits a tortfeasor who has paid more than his share of a solidary obligation to seek reimbursement from the other tortfeasors for their respective shares of the judgment, which shares are proportionate to the fault of each. Therefore, contribution is allowed only among tortfeasors who are solidarily liable.
>
> In 1996, **La. C.C. art. 2324 was amended to <u>eliminate solidary liability,</u> <u>except</u> where tortfeasors conspire to commit an <u>intentional or willful act</u>. Non-intentional tortuous acts are now considered joint and divisible, and each joint tortfeasor is liable only for the degree of fault attributed to his actions.**[25]

The court held that since the petition did not allege intentional or willful acts which would invoke solidary liability, plaintiff had failed to state a cause of action for contribution. None of the claims Kolbe asserts against Landis invoke solidary liability. Nor does Kolbe claim that Landis committed intentional or willful acts. Accordingly, Kolbe cannot be held liable for Landis' conduct. Thus, it has no claim for contribution against Landis.

    **2.  <u>No Right to Indemnity.</u>**

Similarly, since Kolbe cannot be held liable for Landis' fault, it has no basis on which to seek indemnity from Landis. Indemnity may be sought when one party discharges a liability which another rightfully should have assumed. *Nassif v. Sunrise Homes, Inc*., 98-3193 (La. 6/29/99), 739 So.2d 183, 185. The *Nassif* court further described indemnity as follows:

> It is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or

---

[25] *Id.* at 806 – 07 (internal citations removed).

> tortious act caused the loss. The obligation to indemnify may be
> express, as in a contractual provision, or may be implied in law,
> even in the absence of an indemnity agreement. An implied
> contract of indemnity arises only where the liability of the person
> seeking indemnification is solely constructive or derivative and
> only against one who, because of his act, has caused such
> constructive liability to be imposed. Thus, because the party
> seeking indemnification must be without fault, a weighing of the
> relative fault of tortfeasors has no place in the concept of
> indemnity.

As noted above, "Louisiana's policy is that each tortfeasor pays only for that portion of the damage he has caused and the tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of that other person."[26]  As a result of this new policy, "the right of contribution among solidary tortfeasors also disappeared since it is no longer necessary in light of the abolishment of solidarity."[27]  Now, the fact finder's job is to "determine the percentage of fault of all persons causing injury to plaintiffs.  If the fact finder concludes that plaintiffs' damages were caused by more than one person, then each joint tortfeasor is only liable for his degree of fault and cannot be held solidarily liable with another tortfeasor for damages attributable to that other tortfeasor's fault."[28]  Louisiana's comparative fault scheme, codified in articles 2323 and 2324 in 1996, applies to "'all' cases, including products liability, strict liability, and absolute liability cases."[29]

Moreover, there is no right to indemnity for a joint tortfeasor whose act or failure in the performance of a duty was a contributory cause of the injury, and there exists no right to indemnity when the liability of the party asserting it cannot be considered as technical, vicarious,

---

[26] *Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism*, 2002-0563 (La. 10/15/02), 828 So.2d 530, 538.
[27] *Id.*
[28] *Id.* at 539.
[29] *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.,* No. CIV.A. 09-750, 2011 WL 2214936, at *2 (W.D. La. June 6, 2011).

constructive or derivative.[30]   Additionally, since a claim for tort indemnity is based upon the indemnitee's technical or constructive liability, "[s]crutiny is thus directed at the nature, not the quantum, of the fault, if any, of the party seeking indemnity."[31]   If the fault of the party claiming indemnity "can be characterized as merely technical or constructive, the action for indemnity may lie."[32]   Conversely, if the nature of the fault alleged against the indemnitee is active or actual fault, a claim for tort indemnity cannot be sustained.[33]   **If the facts as alleged by a plaintiff against the party seeking indemnity do not show that a defendant's liability is predicated upon mere derivative or constructive fault, that defendant is unable to state a cause of action for indemnity**.[34]   If allegations against a third-party defendant for indemnity could be read only as charging either concurrent fault or fault constituting an intervening or superseding cause of the injured party's damage, **such allegations could not support a claim for indemnity**.[35]

Here, there is no right to indemnity for Kolbe whose act or failure in the performance of a duty is alleged to be the cause of the injury alleged by Notre Dame.  There exists no right to indemnity by Kolbe as the liability of Kolbe cannot be considered as technical, vicarious,

[30] *Lombard v. New Orleans Naval Support Activity*, at p. 6, citing *Nassif,* 739 So.2d at 186; Hamway v. Braud, 838 So.2d 803, 806 (La.App. 1st Cir.2002).
[31] *Lombard* at 6 citing *Ducre v. Executive Officers of Halter Marine, Inc.,* 752 F.2d 976, 984-85 (5th Cir.1985).
[32] *Id.*
[33] See *Id*; see also *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 267 (5th Cir.1991) (holding that a defendant cannot claim tort indemnity against a third party for tort immunity when a plaintiff attempts to recover from a defendant for the latter's affirmative negligence); *Hesse v. Champ Serv. Line*, 828 So.2d 687, 692 (La. App. 3d Cir.2002).
[34] *Lombard* at 6; See *Hamway v. Braud*, 838 So.2d803, 806 (La. App. 1st Cir.2002) (holding that allegations which demonstrated direct or primary negligence of a defendant precluded a tort indemnity claim by such defendant against other defendants).
[35] *Lombard* at 6 citing *Ducre*, 752 F.2d 976 (citing *White v. Johns-Manville Corp*., 662 F.2d 243 (4th Cir.1981)).

constructive or derivative.  The alleged fault of Kolbe cannot be characterized as merely technical or constructive.  Notre Dame has clearly alleged the independent fault on the part of Kolbe.[36]  As the nature of the fault alleged by Notre Dame against Kolbe is active or actual fault, in manufacturing the windows at issue, a claim for tort indemnity cannot be sustained by Kolbe. Moreover, as the facts as alleged by Notre Dame against Kolbe do not show that Kolbe's liability is predicated upon mere derivative or constructive fault, Kolbe is unable to state a cause of action for indemnity.  The allegations against Landis for indemnity could be read only as charging either concurrent fault or fault constituting an intervening or superseding cause of the injured party's damage, i.e., later alleged manufacturing of window mullions, such allegations cannot support a claim for indemnity.

Landis submits that this Honorable Court should dismiss Kolbe's claims for tort indemnity because the liability of the would-be indemnitee, Kolbe is not based upon a theory of vicarious or strict liability that could compel such party to pay a judgment based upon Landis' fault but, rather, the claim is based only upon Kolbe's active negligence.[37]  Here, as in *Carter,* there is no claim against the third-party plaintiff, Kolbe, for strict or vicarious liability.  Rather, the claim against Kolbe is for active negligence and fault.  Any recovery by Notre Dame against Kolbe will be based upon Kolbe's actual negligence or fault, not upon any theoretical or constructive liability.  The question of whether Kolbe's negligence was active or passive might

---

[36] See Paragraphs 13 & 14 of the Complaint filed by Notre Dame, Record Doc 1.

[37] *Lombard,* at 7 citing *Threlkeld* at 268 (holding that an allegation by a client that an attorney was actively negligent in permitting a claim to prescribe could not result in the attorney being cast in judgment for mere passive or technical fault); *Hesse,* at 691 (affirming the dismissal of premises lessor and lessee's indemnity claim against a manufacturer because the fault alleged against the lessor and lessee was primary and direct rather than derivative or constructive); see also *Hamway*, at 806 (holding that fault based upon affirmative conduct contributing to a plaintiff's injury was actual fault rather than derivative constructive fault and such fault prevented a claim for indemnity).

have some bearing upon the percentage of fault attributable to Kolbe, but it is not relevant to the issue of indemnity.  Indemnity is not available to Kolbe who is actually alleged to be negligent.[38]

Since Kolbe may not be held liable for Landis' fault and may only be held liable for its own fault, as described hereinabove, there is no place for the concept of indemnity.  There would never be any basis for Kolbe to be indemnified by Landis because Kolbe will never be held liable for Landis' fault.  Therefore, as a matter of law, Kolbe cannot seek indemnity from Landis.

3.  **Pursuant to the Louisiana Supreme Court's decision in *Suire v. Lafayette City-Parish Consol. Govt.*, Kolbe has no claim for indemnity against Landis whatsoever unless and until a judgment is entered against Kolbe and the lawsuit is concluded.**

Should this Court determine that Kolbe does have a right of action for indemnity against Landis, per the Louisiana Supreme Court decision in *Suire v. Lafayette City-Parish Consol. Govt.*, Landis could never owe indemnity to Kolbe until a judgment was issued against Kolbe determining it to be liable to Notre Dame and the lawsuit was concluded.[39]  Only then, is it even possible for a cause of action by Kolbe against Landis for indemnity to arise.[40]  As a result, Kolbe's claims for indemnity against Landis have not even yet arisen and are, thus, premature.  As such, these claims should be dismissed.

---

[38] *Lombard* at 6 citing *Carter,* at 107-08 (citing *Appalachian Corporation*, supra at 541); 109 *Dupree v. Pechinay St. Gobain Co.*, 369 So.2d 1075 (La. App. 1st Cir.1979), writ denied, 371 So.2d 1341 (La.1979); *Joiner v. Diamond M. Drilling Co.*, 688 F.2d 256 (5th Cir.1982).
[39] See *Suire v. Lafayette City-Parish Consol. Govt.*, 907 So.2d 37, 53 (La. 2005).
[40] *Id.*

**C. THE VERY NATURE OF A REDHIBITORY DEFECT CLAIM REQUIRES THAT THE DEFECT EXIST IN THE ITEM AT THE TIME OF DELIVERY, WHICH PRETERMITS ANY CLAIM AGAINST A PARTY SUCH AS LANDIS WHICH HAD NO CONTACT WITH THE ITEM UNTIL AFTER DELIVERY.**

In its Complaint for damages, Notre Dame asserted a claim against Kolbe in redhibition for "the price of the windows," related interest, costs, damages and attorney's fees.[41]   Pursuant to Louisiana Civil Code Article 2530, "[t]he warranty against rehibitory defects covers **only defects that exist at the time of delivery.**"[42]   Thus, by definition, Notre Dame's claim in redhibition against Kolbe can only relate to the defects that existed in the windows at the time of delivery.

Factually, Kolbe manufactured the windows and delivered them to the construction site. Additionally, Kolbe was the **only** party that had any contact with the windows it manufactured up to the time of delivery.  Landis had absolutely no contact of any kind with the windows manufactured and delivered by Kolbe **until after they were delivered**.  For a redhibition warranty right to exist, the defects must exist at the time of delivery.  Therefore, it is impossible that Landis, a party which had no contact with the windows prior to delivery, could ever be susceptible to a rehibitory claim for such windows.  It follows then, that Kolbe is unable to claim contribution or indemnity for Notre Dame's redhibition claims regarding the windows manufactured and delivered by Kolbe, when the very nature and definition of a redhibition claim prevents such a claim against Landis for windows which it did not come into contact with, until **after delivery.**  Simply put, Kolbe cannot seek contribution or indemnity for a claim that can only apply to Kolbe.

---

[41] See Complaint for Damages, Paragraph 23, Record Doc. 1.
[42] La. Civ. Code art. 2530.

However, even disregarding that an action in redhibition for the windows delivered to the site by Kolbe could never prevail against Landis, the legal theories of comparative fault, as well as La. Civ. Code art. 1994, as discussed *infra*, would nonetheless protect Kolbe from ever being held responsible in redhibition for any alleged fault of Landis.

### 1.  <u>Comparative fault applies to Redhibition claims</u>.

"In a suit for redhibition, the plaintiff must prove: (1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; (2) the thing contained a non-apparent defect at the time of sale; and (3) the seller was given an opportunity to repair the defect."[43]  Kolbe does not allege that Landis sold it a thing and, in fact, Kolbe and Landis never contracted with one another.  Thus, Kolbe does not make a direct claim against Landis under Louisiana's redhibition laws.  Rather, Kolbe seeks contribution and indemnity from Landis based on fault Kolbe may bear for Landis under Louisiana's redhibition laws.  A claim for redhibition is subject to Louisiana's comparative fault scheme, and therefore, Kolbe cannot be held liable to Notre Dame for Landis' fault in redhibition.

In *Petroleum Rental Tools, Inc. v. Hal Oil & Gas Co.*,[44] the court used a comparative fault scheme to apportion fault among several parties responsible for oil well damaged caused by failed casing and work string. The court found that the basis of Tadlock, one of the parties, fault was the redhibitory defect present in casing it sold to Hal Oil. The court concluded that "Tadlock's liability for the redhibitory defect qualifies as 'fault' under Article 2323.  And that to

---

[43] *Jackson v. Slidell Nissan,* 693 So.2d 1257, 1262 (La.Ct.App.1997) (citing *Vincent v. Hyundai Corp.,* 633 So.2d 240, 243 (La.Ct.App.1993), *writ denied,* 634 So.2d 832 (La.1994)).

[44] *Petroleum Rental Tools, Inc. v. Hal Oil & Gas Co.*, 95-1820 (La. App. 1 Cir. 8/22/97), 701 So.2d 213, 217-18 (La. Ct. App. 1997) writ dismissed, 97-3088 (La. 2/10/98), 706 So.2d 982.

"hold otherwise would be to fail to give effect to the phrase in Article 2323 B, 'regardless of the basis of liability.'"  In *Chevron U.S.A., Inc. v. Aker Maritime, Inc.*,[45] the court held that that comparative fault applied in a redhibition claim and that defendants should split the amount of attorney fees due by the percentage of fault attributable to each.  Thus, even if La. Civ. Code art. 2530 ceased to exist, and a claim could be brought against Landis in redhibition for the windows delivered by Kolbe, Kolbe can never be held responsible for Landis' fault, if any.  Moreover, even if La. Civ. Code art. 2530 ceased to exist and this Court was also inclined to hold that comparative fault does not apply to rehibitory claims, La Civ. Code art. 1994, *infra,* provides a tertiary reason why Kolbe's derivative claim against Landis in redhibition cannot prevail.

**2.  <u>Should this Court determine that Comparative Fault does not apply to Redhibition, Louisiana Civil Code Article 1994 mandates that Kolbe will only be liable for damages *caused by* its product.</u>**

Even if this Court finds that comparative fault does not apply to redhibition claims, Kolbe cannot seek contribution or indemnity from Landis under a theory of redhibition because Notre Dame may only obtain damages from Kolbe for a redhibitory defect caused by Kolbe.  Thus, there is no possibility that Kolbe will be held responsible for Landis' fault, which is required for it to seek contribution or indemnity.  Louisiana Civil Code article 1994, states as follows:

> An obligor is liable for the damages **caused by** his failure to perform a conventional obligation.
>         A failure to perform results from nonperformance, defective performance, or delay in performance.[46]

Louisiana courts agree that an obligor is only liable for damages caused by its failure to perform the obligation owed.[47]  In *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*,[48]

---

[45] *Chevron U.S.A., Inc. v. Aker Maritime, Inc*., 2008 WL 594648 (E.D.La.2008), *reversed on other grounds by*, 604 F.3d 888.
[46] La. C. C. art. 1994.

even though the court found that comparative fault did not apply to the redhibition claim, it found that "damages are limited to only those damages **'caused by'** the redhibitory defect, and not those damages attributable to other causes."  Thus, even though the *Hollybrook* court would not find that comparative fault applied to redhibition claims, it did find that article 1994 applies to redhibition claims, which only allows a plaintiff to recover from an obligor for damages caused by that obligor's failure to perform.  Notre Dame can only obtain damages from Kolbe for damages caused by Kolbe's failure to perform an obligation.  Kolbe cannot be held responsible for Landis under article 1994 and *Hollybrook* because Landis' alleged redhibitory conduct would be an "other cause," for which Kolbe cannot be held responsible to Notre Dame. Thus, as matter of law, Kolbe can never be held liable to Notre Dame for damages caused by Landis' failure to perform an obligation.  Accordingly, there is no basis for Kolbe's contribution and indemnity claims against Landis based on redhibition.

### D.  COMPARATIVE FAULT APPLIES TO THE LOUISIANA PRODUCTS LIABILITY ACT.

Louisiana's Products Liability Act, §9:2800.53, *et al*., has a single cause of action "holding manufacturers liable for damages 'proximately caused by a characteristic of the product that renders [it] unreasonably dangerous when such damage arose from a reasonably anticipated use of the product.'"[49]  A plaintiff asserting a products liability claim against a manufacturer

---

[47] *Dozier v. Dean Richard Enterprises, Inc.,* 2000-646 (La. App. 3 Cir. 11/2/00), 772 So.2d 322, 325; *Citi Mortgage, Inc. v. Chase*, 2011-0661 (La. App. 4 Cir. 12/14/11), 81 So.3d 255, 258 (La. Ct. App. 2011) writ denied, 2012-0137 (La. 3/23/12), 85 So.3d 93; *Imperial Chemicals Ltd. v. PKB Scania (USA), Inc*., 2004-2742 (La. App. 1 Cir. 2/22/06), 929 So.2d 84, 93 (La. Ct. App.) writ denied sub nom. *Imperial Chemicals Ltd. v. PKB Scania (USA), Inc.*, 2006-0665 (La. 5/26/06), 930 So.2d 31.

[48] 09-750, 2011 WL 2214936, at *3 (W.D. La. June 6, 2011).

[49] *Roman v. Western Mfg., Inc*., 691 F.3d 686, 697 (5th Cir. 2012) (citing La.Rev.Stat. § 9:2800.54).

must show (1) that his damages were proximately caused by a characteristic of the product that renders it unreasonably dangerous, and (2) that his damages arose from a reasonably anticipated use of the product.[50]  **Comparative fault principles under La. Civ. Code art. 2323 apply to claims brought under the Louisiana Products Liability Act** ("LPLA").[51]  Under principles of comparative fault, one tortfeasor cannot be held responsible for the fault of another tortfeasor.[52]

Kolbe's claim against Landis under the LPLA is based on its allegation that Landis caused Notre Dame's damages when it designed, fabricated, assembled, and installed final window assembly products that were defective.  Kolbe has not alleged that it has suffered damages caused by Landis' unreasonably dangerous product.  Rather, Kolbe's LPLA claim seeks redress for any liability it may have for Landis' conduct.  As noted above, comparative fault applies to claims made under the LPLA, so Kolbe can only be held liable for its own fault and cannot be held liable for Landis' fault. Thus, Kolbe has no basis under which to bring claims against Landis under the LPLA.

### E.  KOLBE HAS NO CLAIM FOR IMPLIED WARRANTY OF FITNESS.

A claim under La. Civ. Code art. 2524 is predicated on a sale.  Landis did not sell Kolbe anything and thus, it cannot be held liable to Kolbe under the implied warranty of fitness.  Kolbe has acknowledged in its affirmative defense Eleven that "Kolbe did not enter into a contractual or other legal relationship with Notre Dame and/or Landis".  La. Civ. Code art. 2524 states:

> The thing sold must be reasonably fit for its ordinary use.
> When the seller has reason to know the particular use the
> buyer intends for the thing, or the buyer's particular

---

[50] *Kampen v. American Isuzu Motors, Inc.,* 157 F.3d 306, 309 (5th Cir. 1998).
[51] *Roman,* 691 F.3d at 700 (citing *Scott v. Am. Tobacco Co.,* 2002-2449 (La. 11/15/02), 830 So.2d 294).  See also, *Kampen v. American Isuzu Motors, Inc*., 157 F.3d 306, 316 (5th Cir. 1998) (finding that comparative fault has a place in Louisiana products liability law).
[52] *Dumas*, 828 So.2d at 538.

> purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.
>
> If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.

Comment (a) under Article 2524 state "This Article is new.  It does not change the law, however.  It gives express formulation to the seller's obligation of delivering to the buyer a thing that is reasonably fit for its ordinary use."  Kolbe does not claim that Landis sold it anything and thus, Kolbe does not have a claim against Landis for breach of the implied warranty of fitness.  Thus, Kolbe's claims against Landis should be dismissed in their entirety.

## III.   <u>CONCLUSION</u>

For the forgoing reasons, and because Louisiana is definitively a pure comparative fault state, all claims asserted by Kolbe & Kolbe Millwork Co., Inc. against Landis Construction Co., L.L.C. should be dismissed as it is a legal impossibility that Kolbe could be held liable to 425 Notre Dame, L.L.C. for any of the actions of Landis.  However, in the event that any claims asserted by Kolbe against Landis are able to survive Landis' Rule 12(b) Motion to Dismiss, this Court should consider and grant Landis' Alternative Motion to Stay Pending Arbitration, filed concurrently herewith, as any surviving claims against Landis are subject to issues referable to arbitration under an arbitration agreement governed by the Federal Arbitration Act.  As such, all claims by Kolbe against Landis should be dismissed.  Alternatively, any surviving claims in this litigation against Landis should be stayed pending arbitration.

Respectfully submitted:

**BLUE WILLIAMS, L. L. P.**


*/s/ Christopher K. LeMieux*
_____
CHRISTOPHER K. LeMIEUX  #27838
T.A. clemieux@bluewilliams.com
JONATHAN S. FORESTER  #32457
jforester@bluewilliams.com
3421 N. Causeway Blvd., Suite 900
Metairie, LA 70002
Telephone: (504) 831-4091
Facsimile:  (504) 849-3874
**Attorneys for Defendant,**
**Landis Construction Co., L.L.C.**


## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify I have on this 13th day of October, 2015, filed a true and accurate copy of the foregoing pleading with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will provide notice of the electronic filing to Counsel for Plaintiff and Defendants.


*_/s/ Christopher K. LeMieux_____*
CHRISTOPHER K. LeMIEUX