UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

425 NOTRE DAME, LLC                          CIVIL ACTION

VERSUS                                       NO: 15-454

KOLBE & KOLBE MILL WORK CO.,                 SECTION: "J"(4)
INC., ET AL.

### ORDER AND REASONS

Before the Court are two *12(b)(6) Motions to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted* **(Rec. Doc. 36; Rec. Doc. 42)** filed by Third-Party Defendant Landis Construction Co., L.L.C. ("Landis"), two alternative *Motions to Stay Pending Arbitration* **(Rec. Doc. 39; Rec. Doc. 45)** filed by Landis, and oppositions thereto filed by Defendants and Third-Party Plaintiffs Kolbe & Kolbe Millwork Co., Inc. ("Kolbe") **(Rec. Doc. 50; Rec. Doc. 53)** and Grand Openings, Inc. ("Grand Openings") **(Rec. Doc. 54; Rec. Doc. 57)**.

Also before the Court are a *Rule 12(b)(6) Motion to Dismiss* **(Rec. Doc. 48)** filed by Third-Party Defendants Southern Steel Fabricators, Inc. and Southern Steel Fabricators, L.L.C. (collectively "Southern Steel"), a *Motion to Dismiss Grand Opening, Inc.'s Third Party Complaint* **(Rec. Doc. 49)** filed by Third-Party Defendant McInerney & Associates, Inc. ("McInerney"), and oppositions thereto **(Rec. Doc. 55; Rec. Doc. 56)** filed by Grand Openings.

1

Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motions to dismiss filed by Landis, Southern Steel, and McInerney should be **GRANTED**. Landis' *Motion to Stay Pending Arbitration* should be **DENIED** as moot.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from a construction and renovation project in New Orleans, Louisiana. The owner, 425 Notre Dame, L.L.C. ("Notre Dame"), hired Landis as the general contractor on the project. (Rec. Doc. 36-1, at 1.) The contract between Notre Dame and Landis provided that the buildings were to contain an aluminum window system. *Id.* at 2. According to Landis, the architect on the project, Rozas Ward Architects, insisted on using windows manufactured by Kolbe. *Id.*

Landis then entered into a purchase agreement with Grand Openings, a distributor for Kolbe, which provided that Grand Openings would furnish the windows for the project. (Rec. Doc. 1, at 2.) In turn, Grand Openings and Kolbe signed a purchase order, in which Kolbe agreed to manufacture the windows. (*See* Rec. Doc. 36-1, at 2.) Landis also entered into a contract with Southern Steel, in which Southern Steel agreed to manufacture the window mullions and steel stiffners. (Rec. Doc. 48-1.) McInerney installed the mullions and stiffeners manufactured by Southern

Steel, as well as the windows manufactured by Kolbe. (Rec. Doc. 49-1, at 2.)

The windows began leaking after their installation. *Id.* at 3. Notre Dame hired a consultant to perform water intrusion testing services, and the windows failed the test. *Id.* Kolbe removed a window unit and tested it at its facility in Wisconsin. *Id.* Kolbe then attempted to fix the leaking windows by injecting silicone into the corners of each window. *Id.* at 4. Its corrections were unsuccessful, and the windows continued to leak. *Id.* Grand Openings and Kolbe declined to manufacture and provide replacement windows. *Id.*

On February 12, 2015, Notre Dame filed suit against Kolbe and Grand Openings, alleging that Defendants are liable for damages for negligence, for breach of the warranty against redhibitory defects, for breach of the warranty of fitness for ordinary use, and under the Louisiana Products Liability Act ("LPLA"). *Id.* at 5. On August 17, 2015, Kolbe filed a cross-claim against Grand Openings and a third-party complaint against Landis. (Rec. Doc. 22.) On that same day, Grand Openings filed third-party complaints against Landis, Southern Steel, and McInerney. (Rec. Doc. 24.)

Grand Openings alleged that Southern Steel was liable to it jointly and in solido for any defects in the stiffners and mullions. Grand Openings also alleged that McInerney was liable jointly and in solido for the negligence of its employees in

3

failing to properly install the windows, mullions, and stiffners. Grand Openings and Kolbe both alleged that Landis was required to defend, indemnify, and hold harmless the Third-Party Plaintiffs for the negligence of Landis employees and as a seller or manufacturer under the LPLA.

Landis filed the instant motions on October 13 and October 15. Southern Steel filed its motion on October 19, and McInerney filed its motion on November 17. Kolbe opposed Landis's motions on November 20 **(Rec. Doc. 50; Rec. Doc. 53)**, and Grand Openings filed its opposition on December 8 **(Rec. Doc. 54; Rec. Doc. 55; Rec. Doc. 56; Rec. Doc. 57)**. The Court set the motions for oral argument on December 16, 2015.

<u>**PARTIES' ARGUMENTS**</u>

The motions to dismiss filed by Landis, Southern Steel, and McInerney share the same legal basis. First, the Third-Party Defendants argue that the Louisiana comparative fault scheme applies to the claims asserted against them by the Third-Party Plaintiffs. Under this scheme, Defendants cannot be held liable for the acts, omissions, fault, breaches, or otherwise of any other person. They argue that Notre Dame's claims sound in contract, negligence, and products liability, and the comparative fault doctrine applies to these claims. Because Kolbe and Grand Openings will only be liable for their own negligence, the Third-Party Defendants are not jointly and solidarily liable to the third-

4

party plaintiffs. Without solidary liability, the third-party defendants argue that they cannot be liable for contribution or indemnity. Alternatively, Landis and Southern Steel requested that the actions against it be stayed pending arbitration. The contract signed by Notre Dame and Landis contained a clause that required any disputes between the parties to be decided by arbitration.

In its opposition, Kolbe focuses on its contract claims, arguing that Landis is solidarily liable with it to Notre Dame. Kolbe claims that Landis is liable in redhibition as the co-manufacturer of a defective thing. As such, Landis is deemed to be a seller in bad faith. Kolbe alleges that Landis is a co-manufacturer because it modified Kolbe's windows "by vertically-mulling or fastening together, in the field . . . three sets of Kolbe windows side-by-side into a final window assembly product that consisted of nine total windows assembled in a rectangular grid configuration . . . ." (Rec. Doc. 50, at 4.) The window assemblies were then installed into the project. Thus, Kolbe contends that it and Landis are solidarily liable, enabling Kolbe to bring a third-party claim against Landis.

Grand Openings filed separate oppositions to the motions filed by Landis, Southern Steel, and McInerney. However, its legal arguments in each motion are the same. In its opposition to Landis' motion, Grand Openings first echoes Kolbe's assertion that Landis was a co-manufacturer of the windows, making it solidarily liable

with Kolbe in redhibition. In its oppositions to Southern Steel
and McInerney's motions, Grand Openings again claims that these
Third-Party Defendants were manufacturers of the windows, and thus
they are liable in redhibition. Grand Openings further argues that
comparative fault does not apply in contract claims, including
redhibition. Finally, Grand Openings argues generally that it, as
a mere seller, has no role in the manufacturing of the defective
windows. In addition, Grand Openings seems to assert that the
Third-Party Defendants were manufacturers under the LPLA, but it
does not elaborate on this argument.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint
(including a third-party complaint) must contain "a short and plain
statement of the claim showing that the pleader is entitled to
relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the
defendant fair notice of what the claim is and the grounds upon
which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346
(2005). The allegations "must be simple, concise, and direct."
Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a
plaintiff fails to allege any set of facts in support of his claim
which would entitle him to relief." *Taylor v. Books A Million,
Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr.
Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To

6

survive a Rule 12(b)(6) motion to dismiss, the plaintiff (or third-party plaintiff) must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S.at 678.

## DISCUSSION

Rule 14 of the Federal Rules of Civil Procedure provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). A third-party demand cannot be used to assert that the third-party defendant is also liable to the plaintiff. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 368 n.3 (1978). Such a claim is also inappropriate when "the defendant and putative third party plaintiff says, in effect, 'It was him, not me.'" *Wright v. City of Tallulah*, No. 13-1631, 2014 WL 1788711, at *4 n.5 (W.D. La. May

5, 2014). Rather, a third-party claim may be used "where a proposed third party plaintiff says, in effect, 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff.'" *Id.* (quoting *Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Eistner Assocs., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)). Thus, the defendant must show a "basis for the third-party defendant's liability to the defendant (also known as the third-party plaintiff)." *McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849-50 (5th Cir. 1978).

A third-party demand is appropriate "when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." *Martco Ltd. P'ship v. Bruks Inc.*, 430 F. App'x 332, 334 (5th Cir. 2011) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1446 (3d ed. 2010)). The right to contribution or indemnity must exist under state substantive law. *Gen. Dynamics Corp. v. Adams*, 340 F.2d 271, 279 (5th Cir. 1965). Because this case involves tort and contract claims, the substantive law for each will be discussed separately.

**A. Right to Contribution or Indemnity in Tort Cases**

In Louisiana, the 1996 amendments to Louisiana Civil Code article 2324 abolished solidarity among negligent tortfeasors and

implemented a system of comparative fault. *Beauregard v. State ex rel. DOTD*, 21 So. 3d 442, 443 (La. Ct. App. 2009). Under Louisiana's comparative fault system, "the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, [or] immunity by statute." La. Civ. Code art. 2323. Comparative fault applies to "all" cases, including strict liability, absolute liability, and products liability. *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-750, 2011 WL 2214936, at *2 (W.D. La. June 6, 2011). Comparative fault principles apply in this case unless Kolbe and Grand Openings asserted valid claims for contribution or indemnity.

First, Defendants did not state a valid claim for contribution. "Contribution permits a tortfeasor who has paid more than his share of a *solidary obligation* to seek reimbursement from the other tortfeasors for their respective shares of the judgment, which shares are proportionate to the fault of each." *Hamway v. Braud*, 838 So. 2d 803, 807 (La. Ct. App. 2002) (emphasis in original). Following the 1996 amendments to article 2324, solidary liability arises only if tortfeasors conspire to commit an intentional or willful act. *See Beauregard*, 21 So. 3d at 443. Accordingly, absent such intentional or willful conduct, "[a] joint tortfeasor shall not be liable for more than his degree of fault and shall not be

solidarily liable with any other person for damages attributable to the fault of such other person." La. Civ. Code art. 2324.

Here, the third-party plaintiffs seek contribution from the third-party defendants under the tort theories of negligence and products liability. The third-party defendants did not conspire to commit an intentional tort or acts. Kolbe and Grand Openings alleged mere negligence, not intentional torts. Furthermore, Notre Dame did not allege that Defendants committed intentional torts. Because no intentional acts occurred, joint and solidary liability cannot exist between Third-Party Plaintiffs and Third-Party Defendants with respect to the tort claims.

Second, Defendants did not state a valid claim for indemnity under tort principles. Indemnity is based on the theory of unjust enrichment "and may lie when one party discharges a liability which another rightfully should have assumed." *Nassif v. Sunrise Homes, Inc.*, 739 So. 2d 183, 185 (La. 1999) (quoting *Black's Law Dictionary* 769 (6th ed. 1990)). "The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, under a tort or quasi-contract theory, even in the absence of an indemnity agreement." *Hamway*, 838 So. 2d at 806.[1] In the absence of an express contractual provision, claim for legal indemnity

---

[1] See Part B, *supra*, for a discussion of the right to indemnity arising by contract.

"arises only when the fault of the person seeking indemnification is solely constructive or derivative, from failure or omission to perform some legal duty, and may only be had against one who, because of his act, has caused such constructive liability to be imposed." *Id.* Whereas contribution, or now constructive fault, apportions the loss between joint tortfeasors, indemnity shifts the entire loss from a tortfeasor only constructively at fault to the party primarily responsible for the damages. Thus, a party "who is actually negligent or actually at fault cannot recover [legal] indemnity." *Id.*

"A third-party claim for indemnity should be dismissed if '[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings . . . in the light most favorable to [the party seeking indemnity], that could result in [that party] being cast in judgment for mere technical or passive fault.'" *Martco*, 430 F. App'x at 335 (alteration in original) (quoting *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 267-68 (5th Cir. 1991)). "In determining whether a theoretical basis for indemnity exists, '[s]crutiny is . . . directed at the nature . . . of the fault, if any, of the party seeking indemnity.'" *Id.* (alteration in original) (quoting *Ducre v. Exec. Officers of Halter Marine, Inc.*, 752 F.2d 976, 984-85 (5th Cir. 1985)). "An action for indemnity will lie so long as the party's fault 'can be characterized as merely technical or constructive' and where the

11

party 'was exposed to liability and compelled to pay damages . . . on account of the negligent act of' the third-party defendant." *Id.* (citation omitted).

Here, Defendants' fault was more than technical or constructive. Notre Dame alleged that Kolbe negligently manufactured the windows, which caused them to leak. Notre Dame did not allege that Third-Party Defendants were ultimately at fault. Furthermore, Kolbe and Grand Openings did not allege that Third-Party Defendants are technically liable for Notre Dame's damages. If this Court ultimately finds Defendants to be at fault, Defendants would have no basis for shifting responsibility to Landis, Southern Steel, and McInerney. Thus, Kolbe and Grand Openings could never be cast in judgment for technical or passive fault. For this reason, the rights to contribution and indemnity do not arise under tort law in this case.

### B. Right to Contribution or Indemnity in Contract Cases

Similarly, Louisiana contract law does not give rise to the rights to contribution or indemnity under the facts of this case. In Louisiana contract law, contribution and indemnity are only available to solidary obligors.[2] Thus, this case turns on the

---

[2] "[A]n obligor not at fault who pays damages arising from the fault of another solidary obligor may bring an action to compel the latter to reimburse him. That action is the action of *indemnity* that avails a party burdened with

existence of a solidary obligation between Kolbe and Landis, or between Grand Openings and Landis, Southern Steel, or McInerney. An obligation is solidary when multiple obligors or obligees agree to render one inseparable performance. La. Civ. Code art. 1790; La. Civ. Code art. 1794. Thus, a single obligor or obligee could be called upon to perform the entire obligation. *See id.* Solidarity is not presumed. La. Civ. Code art. 1796. Rather, it must arise by law or by a clear expression of the parties' intent. *Id.* The party who seeks to benefit from solidarity must prove its existence. 5 Saul Litvinoff & Ronald J. Scalise Jr., *La. Civ. L. Treatise, Law Of Obligations* § 7.65 (2d ed.); *c.f. Papania v. Aetna Cas. & Sur. Co.*, 291 So. 2d 908, 911 (La. Ct. App. 1974).

### 1. Solidarity Arising by Contract

First, solidarity did not arise by contract in this case. To become solidarily bound in contract, the parties need not expressly

---

liability because of the fault of another. Thus, if two solidary obligors of an obligation to pay a sum of money have agreed that one of them will pay the debt at maturity, but the one so committed fails through his fault to make payment when due, the other obligor, if called upon to pay the debt plus interest for delay, may recover the moratory interest he paid from the one at fault, besides the latter's virile portion of the debt by way of *contribution*." 5 Saul Litvinoff & Ronald J. Scalise Jr., *La. Civ. L. Treatise, Law Of Obligations* § 7.72 (2d ed.) (citations omitted) (emphasis added).

state that they will be liable "in solido." *Dodd v. Lakeview Motors, Inc.*, 149 So. 278, 280 (La. Ct. App. 1933). Rather, solidarity will arise "if all of the essential elements of an obligation in solido are present." *Id.* For instance, multiple signers of a promissory note become solidarily bound when they all promise to pay the note. *Id.*

Kolbe and Landis did not become solidarily bound by contract because they did not enter into an express contractual agreement. Similarly, Grand Openings did not contract with either Southern Steel or McInerney. Thus, solidary obligations did not arise between these parties. Landis and Grand Openings entered into a contract: the Purchase Order. (Rec. Doc. 42-2.) However, the Purchase Order does not contain an express agreement to be solidarily bound for any obligation owed to Notre Dame. While Grand Openings agreed to defend and indemnify Landis against any liabilities, Landis did not make a reciprocal agreement. (Rec. Doc. 54-1, at 5.) Because the parties did not expressly agree to be solidarily bound, the Purchase Order did not create solidary liability between Grand Openings and Landis.

## 2. Solidarity Arising by Law

Kolbe and Grand Openings' claims for legal, contractual solidarity are based in redhibition and the implied warranty of fitness for ordinary use. The Louisiana Civil Code describes redhibition as follows:

14

> The seller warrants the buyer against redhibitory
> defects, or vices, in the thing sold.
> A defect is redhibitory when it renders the thing
> useless, or its use so inconvenient that it must be
> presumed that a buyer would not have bought the thing
> had he known of the defect. The existence of such a
> defect gives a buyer the right to obtain rescission of
> the sale.
> A defect is redhibitory also when, without rendering the
> thing totally useless, it diminishes its usefulness or
> its value so that it must be presumed that a buyer would
> still have bought it but for a lesser price. The
> existence of such a defect limits the right of a buyer
> to a reduction of the price.

La. Civ. Code Art. 2520. Solidary liability arises between the manufacturer and the seller when the thing sold contains a redhibitory defect. La. Civ. Code art. 2545, Official Comment (c). Louisiana courts have historically held that solidary liability arises among all sellers and manufacturers of the defective product in the chain of title. *Aucoin v. S. Quality Homes, LLC*, 984 So. 2d 685, 692 (La. 2008); *Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc.*, 262 So. 2d 377, 381 (La. 1972). Likewise, "[t]he manufacturer or seller of a component part may also be solidarily bound." *RTT Truck Repair, LLC v. Paccar, Inc.*, No. 09-1105, 2011 WL 865582, at *2 (W.D. La. Mar. 10, 2011).

The warranty of fitness is closely related to the warranty against redhibitory defects. *See* 24 Dian Tooley-Knoblett & David Gruning, *La. Civ. L. Treatise, Sales* § 11:44. The Civil Code simply provides, "The thing sold must be reasonably fit for its ordinary use." La. Civ. Code art. 2524. The general rules of obligations

15

govern a breach of this warranty. *Id.* As with redhibition, all sellers and manufacturers in the chain of title are solidarily liable to the buyer for a breach of warranty. *Media Prod. Consultants, Inc.*, 262 So. 2d at 381. However, Louisiana appellate courts dispute whether solidary liability still exists in contract claims, or whether comparative fault under revised article 2324 has displaced that area of law, as it has in the tort context. *See, e.g., Aucoin v. S. Quality Homes, LLC,* 953 So. 2d 856, 860-61 (La. Ct. App. 2007), *rev'd* 984 So. 2d 685 (La. 2008); *Touro Infirmary v. Sizeler Architects,* 900 So. 2d 200, 203-06 (La. Ct. App. 2005); *Merlin v. Fuselier Constr., Inc.,* 789 So.2d 710, 717 (La. Ct. App. 2001).

This case does not turn on whether comparative fault applies. Rather, it turns on whether Third-Party Defendants can be held liable for redhibition or breach of warranty of fitness. For solidary liability to exist in this case, Third-Party Defendants must be sellers in the chain of title. Louisiana courts have held that a buyer can only bring an action in redhibition against the seller. *Connell v. Davis*, 940 So. 2d 195, 205 (La. Ct. App. 2006); *Sanders v. Earnest*, 793 So. 2d 393, 408 (La. Ct. App. 2001); *Franks v. Royal Oldsmobile Co.,* 605 So. 2d 633 (La. Ct. App. 1992). "Redhibition is not so much directed toward who is at fault in causing the vice to exist but is directed toward the Warranty of

the seller against vices in the thing sold." *Cox v. Moore*, 367 So. 2d 424, 426 (La. Ct. App. 1979); *see Connell*, 940 So. 2d at 205.

Here, if Third-Party Defendants are not sellers, they cannot be solidarily liable with Defendants for redhibition or breach of warranty of fitness. For this reason, McInerney and Southern Steel cannot be held solidarily liable with Grand Openings. No sales agreement existed between these Third-Party Defendants and any other party in this case. Landis, on the other hand, entered into a Purchase Order with Grand Openings. Kolbe asserts that Landis is a seller in the chain of title and that Notre Dame is the ultimate purchaser. However, Landis and Notre Dame did not sign a sales agreement. Rather, they signed a "Standard Form of Agreement between Owner and Contractor." (*See* Rec. Doc. 38-2.) Landis' status as a seller depends on whether this agreement was a contract of sale or a contract to build.

Louisiana courts have elucidated several tests to distinguish a contract of sale from a contract to build.[3] The "fundamental obligation test" provides that a contract to build "involve[s] primarily the furnishing of labor and the contractor's skill in the performance of the job," rather than "a mere sale of materials." *Papa v. La. Metal Awning Co.*, 131 So. 2d 114, 117 (La.

---

[3] *See* Lee H. Ayres, *The Distinction Between a Building Contract and a Sale*, 47 La. L. Rev. 821, 821-835 (March 1987).

Ct. App. 1961). The Louisiana Third Circuit Court of Appeal developed a three-factor test to distinguish a contract to build from a contract of sale. *Duhon v. Three Friends Homebuilders Corp.*, 396 So. 2d 559, 561 (La. Ct. App. 1981). In a contract to build, (1) the buyer has some control over specifications of the object; (2) the negotiations take place before the object is constructed; and (3) the contract contemplates not only that one party will supply materials, but also that that party will furnish his skill and labor to build the desired object. *Id.* Some Louisiana courts have also found that a contract to build arises when a party agrees to construct a building for another on land owned by the other party. *Parker v. Brown*, 150 So. 2d 306, 307 (La. Ct. App. 1963) ("The action is on a construction contract wherein defendant agreed to construct a dwelling for plaintiff according to certain plans and specifications, on a certain-described lot owned by plaintiff. This action does not involve a sale.").

In this case, the parties did not file a copy of the full agreement between Landis and Notre Dame. However, a portion of the contract names Notre Dame as the owner and Landis as the contractor. (Rec. Doc. 38-2.) The agreement specifies Landis' scope of work as follows: (1) restoration and rehabilitation of the existing building at 412 Girod Street; (2) building a new two-story structure next door, including an unfinished shell space on the first floor, two finished condo units on the second floor, and

18

a pool on the roof; (3) building a new one-story structure along Girod Street; (4) building a new eight-story structure at 425 Notre Dame Street, including a lobby and main entrance on the first floor, a parking garage on the first through third floors, an amenities area on the third floor, and finished condo units on floors four through eight. *Id.*

While the Court does not have access to the complete agreement, it is clear that Landis and Notre Dame intended it to be a contract to build, not a contract of sale. Landis' fundamental obligation was to furnish labor and skill in building and restoring the specified structures, not just to sell materials. At least two of the *Duhon* factors are satisfied because Notre Dame exercised some control over the specifications of the project, and negotiations took place before the buildings were constructed. The contract also seems to contemplate that Landis will furnish the skill and labor to complete the project. Finally, under the rule articulated in *Parker*, the contract was a contract to build because Notre Dame already owned the properties on which Landis was to construct the buildings.

Because the contract between Landis and Notre Dame was a building contract, Landis is not the seller of the redhibitory product and cannot be held liable in solido with Kolbe and Grand Openings. However, Kolbe and Grand Openings argue that Landis can be liable in redhibition as a component part manufacturer, not

merely as a seller. If Landis can indeed be considered a manufacturer, any work it performed on the windows occurred outside the chain of title linking Notre Dame to Kolbe. Notre Dame entered into a contract to build with Landis. Pursuant to that agreement, Landis purchased the windows from Grand Openings on Notre Dame's behalf.[4] Grand Openings then contracted with Kolbe, the manufacturer of the windows.

The purchase agreement between Landis and Grand Openings was consummated when the windows were delivered to Landis. Thus, the redhibition claim arose at this moment. *See* La. Civ. Code art. 2530 ("The warranty against redhibitory defects covers only defects that exist at the time of delivery."). If Notre Dame were to sue Landis for its role in installing the windows, its claims would arise under the building contract, not under the Purchase Order. Because Landis and Notre Dame did not enter into a contract of sale, Landis cannot be solidarily liable in redhibition with Grand Openings and Kolbe. To reiterate, "[r]edhibition is not so much directed toward who is at fault in causing the vice to exist

---

[4] At this time, the Court does not decide whether Landis acted as Notre Dame's agent in the transaction, or whether Landis should be considered the ultimate purchaser of the windows. This decision will impact Notre Dame's ability to bring redhibition claims against Kolbe and Grand Openings, an issue that is not presently before the Court.

but is directed toward the Warranty of the seller against vices in the thing sold." *Cox*, 367 So. 2d at 426.

The cases cited by Kolbe do not hold to the contrary.[5] These cases hold that a co-manufacturer can be solidarily liable in redhibition for a defective product purchased by a buyer. *See id*. In several cases, the courts held vendor-builders liable as manufacturers in redhibition. *Schamens*, 326 So. 2d at 622; *see Cipriano*, 84 So. 2d at 824. However, all of the cases involve contracts of sale. Without an underlying contract of sale between Landis and Notre Dame, it is simply impossible for Landis to be liable to Notre Dame for redhibition or breach of warranty of fitness for ordinary use, whether as a seller or as a co-manufacturer.

Solidary liability does not arise under these facts between Third-Party Plaintiffs and Third-Party Defendants. Thus, the third-party demands for contribution and indemnity cannot be

---

[5] *See Spillers v. Montgomery Ward & Co., Inc.*, 294 So. 2d 803, 805 (La. 1974); *Cipriano v. Superior Realty & Construction Corp.*, 84 So. 2d 822, 824 (La. 1956); *Tuminello v. Mawby*, 57 So. 2d 666, 666-67 (La. 1952); *Foust v. McKnight*, 675 So. 2d 1147, 1148 (La. Ct. App. 1996); *Goodman v. Roberts*, 587 So. 2d 807, 809 (La. Ct. App. 1991); *Hosteler v. W. Gray & Co., Inc.*, 523 So. 2d 1359, 1361-62 (La. Ct. App. 1988); *Amin v. Head*, 419 So. 2d 529, 530-32 (La. Ct. App. 1982); *Capitol City Leasing Corp. v. Hill*, 394 So. 2d 1264, 1268 (La. Ct. App. 1981); *Schamens v. Crow*, 326 So. 2d 621, 622 (La. Ct. App. 1976).

maintained. Kolbe and Grand Openings are attempting to use third-party claims to assert that they are not responsible for Notre Dame's damages, but that Landis, Southern Steel, and McInerney are at fault. In effect, Defendants are claiming, "It was him, not me." This is an improper use of the third-party claim. Because Defendants have no legal basis for claiming contribution or indemnity, the Third-Party Defendants' motions to dismiss must be granted.[6]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motions to dismiss filed by Landis, Southern Steel, and McInerney **(Rec. Docs. 36, 42, 48, 49)** are **GRANTED**. Landis' *Motions to Stay Pending Arbitration* **(Rec. Docs. 38, 45)** are **DENIED** as moot.

**IT IS FURTHER ORDERED** that the motions for leave to file reply filed by Landis, Southern Steel, and McInerney **(Rec. Docs. 58, 60, 61, 63, 65, 66)** are **DENIED** as moot.

New Orleans, Louisiana this 16th day of December, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[6] Because Defendants' claims against Third-Party Defendants will be dismissed, it is unnecessary for this Court to consider Landis' alternative *Motion to Stay*.