```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

425 NOTRE DAME, LLC                            CIVIL ACTION

VERSUS                                         NO: 15-454

KOLBE & KOLBE MILL WORK CO.,                   SECTION: "J" (4)
INC., ET AL.
```

## ORDER AND REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 81)** filed by Defendant, Kolbe & Kolbe Millwork Co., Inc. ("Kolbe"), and an *Opposition* thereto **(Rec. Doc. 90)** filed by Plaintiff, 425 Notre Dame, L.L.C. ("Notre Dame"). Kolbe asked the Court to hear oral argument on its motions. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from a construction and renovation project in New Orleans, Louisiana. The owner, Notre Dame, hired Landis Construction Co. L.L.C. ("Landis") as the general contractor on the project. (Rec. Doc. 36-1, at 1.) The contract between Notre Dame and Landis provided that the buildings were to contain an aluminum window system. *Id.* at 2. According to Landis, the architect on the project, Rozas Ward Architects, insisted on using windows manufactured by Kolbe. *Id.* Landis then entered into

1

a purchase agreement with Grand Openings, Inc. ("Grand Openings"), a distributor for Kolbe, which provided that Grand Openings would furnish the windows for the project. (Rec. Doc. 1, at 2.) In turn, Grand Openings and Kolbe signed a purchase order, in which Kolbe agreed to manufacture the windows. (*See* Rec. Doc. 36-1, at 2.) Landis also entered into a contract with Southern Steel Fabricators, Inc. and Southern Steel Fabricators, L.L.C. (collectively "Southern Steel"), in which Southern Steel agreed to manufacture the window mullions and steel stiffners. (Rec. Doc. 48-1.) McInerney & Associates, Inc. ("McInerney") installed the mullions and stiffeners manufactured by Southern Steel, as well as the windows manufactured by Kolbe. (Rec. Doc. 49-1, at 2.)

The windows began leaking after installation. *Id.* at 3. Notre Dame hired a consultant to perform water intrusion testing services, and the windows failed the test. *Id.* Kolbe removed a window unit and tested it at its facility in Wisconsin. *Id.* Kolbe then attempted to fix the leaking windows by injecting silicone into the corners of each window. *Id.* at 4. Its corrections were unsuccessful, and the windows continued to leak. *Id.* Grand Openings and Kolbe declined to manufacture and provide replacement windows. *Id.*

On February 12, 2015, Notre Dame filed suit against Kolbe and Grand Openings, alleging that Defendants are liable for damages for negligence, breach of warranty against redhibitory defects,

for breach of warranty of fitness for ordinary use, and under the Louisiana Products Liability Act ("LPLA"). *Id.* at 5. On August 17, 2015, Kolbe filed a cross-claim against Grand Openings and a third-party complaint against Landis. (Rec. Doc. 22.) On that same day, Grand Openings filed third-party complaints against Landis, Southern Steel, and McInerney. (Rec. Doc. 24.) Grand Openings alleged that Southern Steel was liable to it jointly and *in solido* for any defects in the stiffners and mullions. Grand Openings also alleged that McInerney was liable jointly and *in solido* for the negligence of its employees in failing to properly install the windows, mullions, and stiffners. Grand Openings and Kolbe both alleged that Landis was required to defend, indemnify, and hold harmless the Third-Party Plaintiffs for the negligence of Landis employees and as a seller or manufacturer under the LPLA.

In an Order and Reasons dated December 16, 2015, the Court dismissed Defendants' claims against Third-Party Defendants. (Rec. Doc. 69.) The Court stated:

> Solidary liability does not arise under these facts between Third-Party Plaintiffs and Third-Party Defendants. Thus, the third-party demands for contribution and indemnity cannot be maintained. Kolbe and Grand Openings are attempting to use third-party claims to assert that they are not responsible for Notre Dame's damages, but that Landis, Southern Steel, and McInerney are at fault. In effect, Defendants are claiming, "It was him, not me." This is an improper use of the third-party claim. Because Defendants have no legal basis for claiming contribution or indemnity, the Third-Party Defendants' motions to dismiss must be granted.

3

*Id.* at 21-22. Specifically, with respect to Landis, the Court found that Landis and the Defendants could not be solidarily liable for redhibition or the breach of implied warranty of fitness for ordinary use. Only sellers in the chain of title can be held liable for redhibition. Landis is not a seller. Its contract with Notre Dame is a contract to build, rather than a sale. Thus, the windows' chain of title ended with Landis. In so deciding, the Court emphasized, "At this time, the Court does not decide whether Landis acted as Notre Dame's agent in the transaction, or whether Landis should be considered the ultimate purchaser of the windows. This decision will impact Notre Dame's ability to bring redhibition claims against Kolbe and Grand Openings, an issue that is not presently before the Court." *Id.* at 20 n.4.

Kolbe filed the instant motion on February 4, seeking summary judgment on Notre Dame's redhibition and warranty of fitness claims. Notre Dame opposed the motion on March 15, 2016. Kolbe subsequently filed a Motion for Leave to File Reply. (Rec. Doc. 92.) Kolbe's motion is set for oral argument on March 23.

<b><u>PARTIES' ARGUMENTS</u></b>

**A. Kolbe's Motion for Partial Summary Judgment**

In its motion, Kolbe argues that it is entitled to summary judgment on Notre Dame's contract-based claims. Essentially, Kolbe asserts that the 1995 amendments to the Louisiana Civil Code articles on redhibition eliminated the right of an ultimate

4

consumer to sue a manufacturer in redhibition. Kolbe claims that redhibition is a contract right attached to a sales contract, not a warranty inherent in the product sold. Thus, Kolbe argues that the right is transmitted from seller to buyer through subrogation. The ultimate buyer is entitled to sue any proceeding seller, reaching back up the chain of title to the manufacturer because each buyer is subrogated to the redhibition rights obtained from each seller.

Subrogation, according to Kolbe, takes place by contract or by operation of law. Kolbe argues that Notre Dame was not subrogated to Landis' rights by contract because the construction contract did not provide for subrogation. Further, Kolbe asserts that the contract between Grand Openings and Landis did not contain any warranty against redhibitory defects. Thus, Kolbe claims that subrogation must arise by operation of law. Kolbe extensively chronicles the legal basis for conventional subrogation in the redhibition context. According to Kolbe, the Civil Code did not initially provide for subrogation in redhibition contracts. Eventually, courts relied on articles pertaining to the warranty against eviction to establish implied subrogation in redhibition cases. Louisiana courts subsequently decided that the ultimate user of a product had the right to sue the manufacturer in redhibition, even if the ultimate user did not purchase the product. This interpretation of the law allowed owners of buildings

to sue manufacturers in redhibition, even when the owners' general contractors purchased the product.

However, Kolbe argues that the 1995 amendments eliminated this implied subrogation. The redhibition article amendment specifically provides that the buyer is subrogated to the redhibition right of the seller. Because the article now specifically mentions a buyer-seller relationship, Kolbe argues that the legal right of subrogation applies only in sales contracts, not building contracts. This Court previously held that Landis and Notre Dame entered into a contract to build, not a contract of sale. Thus, Kolbe claims that Notre Dame was not subrogated to Landis' right to sue in redhibition. Further, Kolbe argues that the older cases applying subrogation in the absence of a sales contract are no longer good law following the 1995 amendments.

**B. Notre Dame's Opposition**

In its opposition, Notre Dame first argues that one of Kolbe's exhibits is inadmissible. Kolbe attached Exhibit D, a purported copy of the Purchase Order between Grand Openings and Landis. Notre Dame argues that the exhibit is inadmissible because it is incomplete. The document does not contain the signature page or the Instructions, Terms, and Conditions of the order. Thus, Notre Dame asks the Court to strike Exhibit D from the record.

6

Next, Notre Dame argues that it is subrogated to Landis' rights by contract and by operation of law. Notre Dame asserts that the warranty of redhibition transferred from Grand Openings to Landis via the Purchase Order. The Instructions, Terms, and Conditions contained a provision that provided that warranties ran to Landis, "its successors, assigns, customers, and the users of its customers' products . . . ." (Rec. Doc. 90, at 7.) Further, the contract between Landis and Notre Dame provided that the contractor, Landis, agreed to assign all manufacturer's warranties to the buyer, Notre Dame. Thus, Notre Dame claims that it was subrogated to Landis' right to sue based on the warranty against redhibitory defects and warranty of fitness.

Further, Notre Dame argues that subrogation applies by operation of law. According to Notre Dame, Louisiana courts have repeatedly held that the ultimate end user of a product may sue the manufacturer for redhibition, even though privity of contract between the parties does not exist. Notre Dame asserts that Louisiana jurisprudence also provides that the fact that an owner and a contractor entered into a contract to build does not prevent the owner from suing a manufacturer for redhibition.

Finally, Notre Dame addresses Kolbe's suggestion that Landis waived any applicable warranties. Notre Dame argues that a waiver must be "(1) be written in clear and unambiguous terms, (2) be contained in the contract, and (3) either be brought to the

7

attention of the buyer or explained to him." (Rec. Doc. 90, at 15.) Notre Dame argues that Kolbe did not introduce sufficient evidence to prove a valid waiver. Also, Kolbe, as a manufacturer, is presumed to have knowledge of the defective product. A waiver is invalid when the seller has declared that the product has a quality that he knew it did not have. Thus, any waiver is per se invalid because Kolbe did not disclose the redhibitory defects.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury

8

could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

**DISCUSSION**

First, the Court will address Notre Dame's admissibility arguments. On a motion for summary judgment, the evidence introduced must be competent and admissible at trial. *Bosarge v. Cheramie Marine LLC*, No. 14-2153, 2015 WL 4645636, at *2 (E.D. La. Aug. 4, 2015) (Milazzo, J.). "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part–or any other writing or recorded statement–that in fairness ought to be considered at the same time." Fed. R. Evid. 106. However, "arguments regarding the accuracy or incompleteness of the document go to the weight of the evidence, not its admissibility." *Greener v. Cadle Co.*, 298 B.R. 82, 92 (N.D. Tex. 2003). The documents introduced by Kolbe as Exhibit D were incomplete, but this does not affect their admissibility. The Court declines to strike Kolbe's Exhibit D from the record.

Kolbe argues that it is entitled to summary judgment on Notre Dame's redhibition and warranty of fitness claims. The Louisiana Civil Code describes redhibition as follows:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

La. Civ. Code art. 2520. The warranty of fitness is closely related to the warranty against redhibitory defects. *See* 24 Dian Tooley-Knoblett & David Gruning, *La. Civ. L. Treatise, Sales* § 11:44. The Civil Code simply provides, "The thing sold must be reasonably fit for its ordinary use." La. Civ. Code art. 2524. The general rules of obligations govern a breach of this warranty. *Id.* Because the same law applies to both warranties, the Court will discuss them together.

Kolbe argues that Notre Dame cannot sue in redhibition because it is not subrogated to Landis' redhibition rights. "Subrogation is the substitution of one person to the rights of another." La. Civ. Code art. 1825. Subrogation may be conventional (by contract) or legal (by operation of law). *Id.* Conventional subrogation by the obligee is tantamount to an assignment of rights. *Id.*, Official Comment (a). "All rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor." La. Civ. Code art. 2642. Redhibition rights may be transferred by assignment and conventional subrogation. *Alvis v. CIT Group/Equip. Fin., Inc.,* 918 So. 2d 1177, 1184 (La. Ct. App.

11

2005); *see Kelly v. Porter, Inc.*, 687 F. Supp. 2d 632, 643 (E.D. La. 2010) (Knowles, Maj.).

The Purchase Order between Grand Openings and Landis provided for several warranties. Section 14 of the order states:

> "In addition to any warranty in fact or implied by law, Seller [Grand Openings] hereby expressly warrants that all goods or services covered by this Order will conform to the drawings, specifications, data, samples, or other description, furnished or incorporated as part of this Order and will be fit and sufficient for the purpose intended, merchantable, of good materials and workmanship and free from defect. . . . These warranties shall run to the Buyer [Landis], its successors, assigns, customers, and the users of its customers' products . . . ."

(Rec. Doc. 90-1, at 5.) By its own terms, the Purchase Order warrants against defects and warrants that the product will be fit for its ordinary use. Additionally, the Purchase Order includes "any warranty . . . implied by law." The warranty of fitness and the warranty against redhibitory defects are implied by law in every sales contract. *Radalec, Inc. v. Automatic Firing Corp.*, 81 So. 2d 830, 833 (La. 1955) (warranty against redhibitory defects); *Ca. Chem. Co. v. Lovett*, 204 So. 2d 633, 636 (La. Ct. App. 1967) (warranty of fitness).

The Purchase Order specifically provides that the warranties will cover Landis' successors, assigns, customers, and users of its customers' products. Notre Dame argues that it is Landis' customer. Even if Notre Dame is not a customer, it is certainly an assignee of Landis. Notre Dame and Landis signed a Standard Form

12

of Agreement Between Owner and Contractor. (*See* Rec. Doc. 81-3.) The General Conditions to the agreement provide, "Contractor [Landis] agrees to assign to the Owner [Notre Dame] any and all manufacturer's warranties relating to materials used in the Work . . . ." (Rec. Doc. 81-4, at 13.) Thus, Landis assigned the warranties to Notre Dame via the contract. Notre Dame has the right to sue in redhibition and for breach of the warranty of fitness.

Kolbe did not specifically argue that Landis waived any redhibition rights. However, Notre Dame's opposition mentioned the waiver issue. "The parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer." La. Civ. Code art. 2548. Kolbe did not introduce any evidence to show that Landis was made aware of any waiver provisions. Thus, to the extent that Kolbe raised such an argument, the Court cannot decide it on summary judgment.

Moreover, subrogation seems to occur by operation of law in the case at bar. Kolbe argues that the 1995 amendments invalidated earlier cases holding that an end user outside the chain of title can sue in redhibition. According to Kolbe, the end user must also be a buyer. However, cases decided since the 1995 amendments continue to hold that the ultimate consumer of a defective product may sue the manufacturer for redhibition. *See, e.g., Sw. La. Hosp.*

13

*Ass'n v. BASF Const. Chems., LLC*, 947 F. Supp. 2d 661, 682-83 (W.D. La. 2013), *amended* (Sept. 6, 2013).

Commenters debate the reasons for holding that an ultimate user, even if not a buyer, can sue for redhibition. "Although some confusion exists as to the source of this right to sue, be it as an imputed tort or as subrogation or as transmission of an implied warranty with the product with each sale, the right to so sue appears to exist." *Scott v. Am. Tobacco Co.*, No. 97-1178, 1997 WL 749415, at *3 (E.D. La. Dec. 2, 1997) (internal citations omitted); *see also Datamatic, Inc. v. Int'l Bus. Machines Corp.*, 795 F.2d 458, 464 (5th Cir. 1986). Other courts have suggested that, "[w]hen the action is against the manufacturer, proof need only be made that the defect occurred in the manufacture of the product." *Moreno's Inc. v. Lake Charles Catholic Schools, Inc.*, 315 So. 2d 660 (La. 1975); *see C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, No. 10-4441, 2013 WL 990026, at *7 (E.D. La. Mar. 13, 2013) (Morgan, J.); *Aucoin v. S. Quality Homes, LLC*, 984 So. 2d 685, 693 (La. 2008). In that case, a manufacturer may be liable for its product's redhibitory defects, without regard to the status of the end user. Therefore, the 1995 amendments did not necessarily destroy Notre Dame's right to sue.

Even if Notre Dame is not subrogated to Landis' rights, other courts have suggested that an owner and a contractor are parties to an agency relationship, giving the owner the right to sue in

14

redhibition. The Western District of Louisiana has found that agency law, or mandate, is one potential basis for allowing an owner to sue in redhibition, even when the owner is not a purchaser. *Sw. La. Hosp. Ass'n*, 947 F. Supp. 2d at 682-83. "A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. Civ. Code art. 2989. When a mandatary contracts with a third person on the principal's behalf, the principal becomes a party to the contract. *See* La. Civ. Code arts. 3020-23.

In the case at bar, the agreement between Landis and Notre Dame established that Landis would act on Notre Dame's behalf. "The Contractor [Landis] . . . covenants with the Owner [Notre Dame] to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner . . . ." (Rec. Doc. 81-3, at 2.) With Landis acting as Notre Dame's agent in the window purchase from Grand Openings, Notre Dame became a party to the sales contract. Thus, by operation of mandate law, Notre Dame is a buyer and may sue the sellers and manufacturers of the windows for redhibition.

Thus, the Court finds several potential bases for Notre Dame's contract claims against Kolbe and Grand Openings: conventional subrogation, legal subrogation, and by operation of the law of

15

mandate. Granting summary judgment on Notre Dame's contract claims is inappropriate.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Kolbe's *Motion for Summary Judgment* is **DENIED**.

**IT IS FURTHER ORDERED** that Kolbe's *Motion for Leave to File Reply* is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the oral argument set for March 23, 2016 is **CANCELED**.

New Orleans, Louisiana this 21st day of March, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE