```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

425 NOTRE DAME, LLC                        CIVIL ACTION

VERSUS                                     NO: 15-454

KOLBE & KOLBE MILL WORK CO.,               SECTION: "J" (4)
INC., ET AL.
```

**ORDER AND REASONS**

Before the Court are a *Motion for Partial Summary Judgment* **(Rec. Doc. 102)** filed by Plaintiff, 425 Notre Dame, L.L.C. ("Notre Dame") and oppositions thereto filed by Defendants, Kolbe & Kolbe Millwork Co., Inc. ("Kolbe") **(Rec. Doc. 117)** and Grand Openings, Inc. ("Grand Openings") **(Rec. Doc. 115)**. Also before the Court are a *Motion for Partial Summary Judgment* **(Rec. Doc. 104)** filed by Kolbe and an opposition thereto **(Rec. Doc. 113)** filed by Notre Dame. Notre Dame and Kolbe asked the Court to hear oral argument on their motions. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Notre Dame's motion should be **DENIED** and Kolbe's motion should be **GRANTED**.

**FACTS AND PROCEDURAL BACKGROUND**

The Court is well aware of the facts underlying this case. In summary, this litigation arises from a construction and renovation project in New Orleans, Louisiana. The owner, Notre Dame, hired

1

Landis Construction Co. L.L.C. ("Landis") as the general contractor on the project. (Rec. Doc. 36-1, at 1.) The contract between Notre Dame and Landis provided that the buildings were to contain an aluminum window system. *Id.* at 2. According to Landis, the architect on the project, Rozas Ward Architects, insisted on using windows manufactured by Kolbe. *Id.* Landis then entered into a purchase agreement with Grand Openings, Inc. ("Grand Openings"), a distributor for Kolbe, which provided that Grand Openings would furnish the windows for the project. (Rec. Doc. 1, at 2.) In turn, Grand Openings and Kolbe signed a purchase order, in which Kolbe agreed to manufacture the windows. (*See* Rec. Doc. 36-1, at 2.) Landis also entered into a contract with Southern Steel Fabricators, Inc. and Southern Steel Fabricators, L.L.C. (collectively "Southern Steel"), in which Southern Steel agreed to manufacture the window mullions and steel stiffners. (Rec. Doc. 48-1.) McInerney & Associates, Inc. ("McInerney") installed the mullions and stiffeners manufactured by Southern Steel, as well as the windows manufactured by Kolbe. (Rec. Doc. 49-1, at 2.) The windows began leaking after installation. *Id.* at 3.

On February 12, 2015, Notre Dame filed suit against Kolbe and Grand Openings, alleging that Defendants are liable for damages for negligence, breach of the warranty against redhibitory defects, for the breach of warranty of fitness for ordinary use, and under the Louisiana Products Liability Act ("LPLA"). *Id.* at 5.

2

On August 17, 2015, Kolbe filed a cross-claim against Grand Openings and a third-party complaint against Landis. (Rec. Doc. 22.) On that same day, Grand Openings filed third-party complaints against Landis, Southern Steel, and McInerney. (Rec. Doc. 24.) In an Order and Reasons dated December 16, 2015, the Court dismissed Defendants' claims against Third-Party Defendants. (Rec. Doc. 69.) Kolbe filed a Motion for Partial Summary Judgment on February 4, which this Court denied on March 22, 2016. (Rec. Doc. 81; Rec. Doc. 93.)

Notre Dame filed the instant motion on May 17, 2016, seeking summary judgment against Grand Openings on its contractual claims. Kolbe filed the instant motion on May 17, seeking summary judgment on Notre Dame's redhibition and warranty of fitness claims. The parties filed oppositions on May 24, 2016. Both motions are set for oral argument on June 1, 2016.

**PARTIES' ARGUMENTS**

**A. Notre Dame's Motion for Partial Summary Judgment**

In its motion, Notre Dame seeks summary judgment against Grand Openings on its contractual claims. Specifically, Notre Dame contends Grand Openings is liable (1) for the alleged redhibitory defects in the Kolbe windows, (2) for breach of the warranty of fitness for ordinary use under Louisiana Civil Code article 2524, and (3) for providing windows that were "not of the kind or quality specified in the contract or represented by the seller" under

3

article 2529. Grand Openings and Kolbe both opposed Notre Dame's motion. Both Defendants pointed to disputed factual issues that they contend preclude summary judgment.

**B. Kolbe's Motion for Partial Summary Judgment**

In its motion, Kolbe argues it is entitled to summary judgment on Notre Dame's redhibition and warranty of fitness claims. Kolbe argues that Notre Dame waived its contractual warranties by agreeing to Kolbe's Express Limited Warranty. This warranty appeared in the purchase order signed by Grand Openings and Landis. (Rec. Doc. 104-16, at 60.) The warranty stated, "This express limited warranty is in lieu of all other warranties, express or implied. There are no implied warranties of merchantability or fitness for a particular purpose, or any other warranties that extend beyond this express limited warranty. . . . The remedies provided under this express limited warranty are exclusive and in lieu of all other remedies at law or equity." *Id.* at 61. The warranty also excluded "[p]roducts which have non-Kolbe products mulled/attached to them and/or field-mulled units if not mulled to Kolbe's specifications." *Id.* Kolbe argues that Notre Dame was aware of the exclusionary language because Landis' project executive, Sarah Busch, was aware of the language. (Rec. Doc. 104-26, at 11.) Kolbe asserts that Notre Dame is bound by Landis' knowledge because Landis acted as Notre Dame's agent in the transaction. Because the express limited warranty excluded redhibition and the warranty of

4

fitness, Kolbe argues that Landis did not transfer those warranties to Notre Dame.

In its opposition, Notre Dame argues that Kolbe failed to prove a valid waiver of redhibition. First, Notre Dame asserts that Kolbe failed to show that the warranty exclusion applied to an end user of the product. The exclusion appeared in the purchase order signed by Grand Openings and Landis. Notre Dame argues that the waiver did not appear in its contract with Landis. Further, Notre Dame claims that Kolbe's warranty exclusions were never brought to its attention. Second, Notre Dame points out that a manufacturer of a product is presumed to have knowledge of the redhibitory defects in its products. Thus, Notre Dame asserts that it is not bound by an otherwise valid waiver. Third, Notre Dame argues that it and Landis are subrogated to Grand Openings' rights in redhibition as against Kolbe. Even if the Kolbe waiver is valid as to it and Landis, Notre Dame argues that it may maintain its claims against Kolbe through subrogation to Grand Openings' potential claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069,

5

1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the

6

record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

**A. Notre Dame's Motion for Partial Summary Judgment**

Notre Dame seeks partial summary judgment on its contractual claims, including redhibition, the warranty of fitness, and the requirement that goods supplied be of the type contemplated by the contract. The Louisiana Civil Code describes redhibition as follows:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

7

La. Civ. Code art. 2520. The warranty of fitness is closely related to the warranty against redhibitory defects. *See* 24 Dian Tooley-Knoblett & David Gruning*, La. Civ. L. Treatise, Sales* § 11:44. The Civil Code simply provides, "The thing sold must be reasonably fit for its ordinary use." La. Civ. Code art. 2524. The general rules of obligations govern a breach of this warranty. *Id.* The Civil Code also requires a seller to supply goods "of the kind or quality specified in the contract or represented by the seller." La. Civ. Code art. 2529. If the seller fails to comply with this article, the buyer's remedies are governed by the general rules of sales and conventional obligations. *Id.*

Notre Dame contends that no genuine issues of material fact exist. First, Notre Dame argues that the Kolbe windows leaked, causing water to pool on the concrete floor of the building. Because the windows allowed water to enter the building, Notre Dame argues that they were rendered useless. As evidence of this alleged defect, Notre Dame cites the deposition of George Digman, Kolbe's director of research and development. (Rec. Doc. 102-2.) Digman stated that the windows were not manufactured in accordance with Kolbe's standards and that the deviations from the standards allowed water to penetrate the windows in two places. *Id.* at 18-20. Further, Digman testified that Kolbe's testing revealed penetration of water in the two locations and that video evidence showed continued water intrusion after Kolbe attempted to repair

8

the defects. *Id.* at 29. Thus, Notre Dame argues that it is entitled to summary judgment on its redhibition claim.

Second, Notre Dame argues that the windows were unfit for their ordinary use because they allowed water to intrude into the building. Digman stated that the windows were intended to prevent water from entering the building. *Id.* at 30. Third, Notre Dame argues that the windows were not of the quality specified in the Purchase Order. The Purchase Order specified that the windows would be "fit and sufficient for the purposes intended, merchantable, of good materials and workmanship, and free from defect." (Rec. Doc. 102-6, at 5.) Notre Dame asserts that the windows were neither fit and sufficient for their intended purpose, nor free from defect. Specifically, Notre Dame claims that the windows contained insufficient sealant in the mitered joints. Further, Notre Dame argues that the windows were not of good materials and workmanship because Digman admitted that they were not manufactured in accordance with Kolbe's standards.

However, both Kolbe and Grand Openings point to potential disputed fact issues. First, Kolbe cites evidence that disputes the value of the water intrusion testing ordered by Notre Dame. Kolbe asserts that the tests suggest deficiencies in Landis' workmanship, not in the Kolbe windows themselves. (Rec. Doc. 117-19, at 1.) Second, Kolbe points to the results of an audit of the window installation. According to Kolbe, the auditor's written

9

report, dated August 6, 2014, reveals problems with the work of Landis and its subcontractors. (Rec. Doc. 117-12.) Third, Kolbe argues that Notre Dame again conducted testing of the windows, supposedly isolating the windows themselves. For this test, the company hired by Notre Dame used a different standard and definition of "water penetration," thus skewing the results. (Rec. Doc. 117, at 12.)[1]

Fourth, Kolbe's expert engineer opined that the windows passed the water penetration standards and that any water observed on the floor of the building was attributable to deficiencies in the perimeter sealant joints and Landis' field vertical mullion. (Rec. Doc. 117-14, at 39-41.) Fifth, Kolbe cites evidence of improper handling of Kolbe's windows. Specifically, Kolbe claims that McInerney, Landis' subcontractor responsible for window installation, improperly removed gusset plates that were intended to hold the window units in place until they were ready for field mulling. (Rec. Doc. 117-5.) Finally, Kolbe asserts that Notre Dame's motion relies on the deposition testimony of George Digman. Kolbe argues that the Court cannot favor Digman's testimony without

---

[1] Kolbe bases this argument on the deposition of James Blakey, whom Notre Dame hired to conduct the window testing. Because the deposition was taken on May 20, the transcript is not yet available.

making credibility determinations, which is forbidden at the summary judgment stage.

Similarly, Grand Openings points out factual issues in its opposition. First, Grand Openings cites testimony from Notre Dame's water-proofing consultant, John Tatum. According to Grand Openings, Tatum testified about the potential sources of water intrusion but could not determine the actual point of water intrusion. (Rec. Doc. 102-9, at 31-32.) Further, Grand Openings points out that the first set of water testing showed intrusion of water from the sealant around the perimeter of the window. Grand Openings cites a statement of Landis' project manager to confirm this. (Rec. Doc. 115-2, at 2.) Second, Grand Openings repeats the conclusions of Kolbe's expert engineer, who testified that Landis' mishandling of the windows resulted in the water penetration. Third, Grand Openings highlights the statement of the water intrusion auditor, who did not observe any water intrusion in his inspection of the testing at the construction site. (Rec. Doc. 117-9, at 15.) Grand Openings asserts that the opening of the mitre corners – a result of Landis' mishandling of the windows – allowed the intrusion of water. Thus, Grand Openings argues that the windows did not contain a manufacturing defect.

Defendants' oppositions reveal the existence of numerous factual issues that preclude summary judgment. The key issue is whether the defect in the windows existed at the time they were delivered

11

to Landis. Defendants' opposition evidence suggests that Landis or its subcontractors may be responsible for the leaking windows. Thus, Notre Dame is not entitled to summary judgment at this time.

**B. Kolbe's Motion for Partial Summary Judgment**

Kolbe argues that it is entitled to summary judgment because Notre Dame effectively waived all warranties not specifically provided for in Kolbe's Express Limited Warranty. The Civil Code provides that the parties to a contract may waive certain warranties. "The parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer." La. Civ. Code art. 2548.

Waivers of the warranties are strictly construed against the seller. *Boos v. Benson Jeep–Eagle, Inc.*, 717 So. 2d 661, 664 (La. Ct. App. 1998). Additionally, the seller carries the burden of proving an effective waiver. *Id.* Further, "[w]arranty limitations are generally construed against manufacturers. For that reason, limitation attempts have often been ineffective." *Datamatic, Inc. v. Int'l Bus. Machines Corp.*, 795 F.2d 458, 465 (5th Cir. 1986) (internal citations omitted). However, commercially sophisticated parties are held to a higher standard than unknowledgeable consumers. *Id.* "In such cases, Louisiana courts are more willing to find that the waiver was clear and unambiguous, and that the

12

buyer's signature is evidence that its terms and conditions were brought to his attention." *Id.* (internal citations omitted).

In a previous Order and Reasons, the Court found that Kolbe did not introduce any evidence to show that Landis was made aware of any waiver provisions. (Rec. Doc. 93.) As an exhibit to the instant motion, Kolbe attached the deposition of Sarah Busch, the Landis project executive responsible for the Notre Dame project. Busch signed the Purchase Order with Grand Openings on Landis' behalf. She testified that she read, observed, and was aware of Kolbe's Express Limited Warranty, which was included in the contract. (Rec. Doc. 104-26, at 11.) Thus, the Court finds that the waivers were brought to Landis' attention.

Notre Dame argues that Kolbe must prove that the waiver was brought to its attention, not merely to Landis' attention. However, the Fifth Circuit suggests otherwise. First, as the Fifth Circuit points out, "a warranty limitation legally operative against the original consumer-buyer is effective against all successive buyers." *Datamatic, Inc.*, 795 F.2d at 460. Because a subsequent buyer's rights in redhibition are based on subrogation, "[w]hen an informed buyer purchases [a product] from a seller who is not a dealer of the manufacturer, his claim against the manufacturer . . . is no greater than the rights of the original buyer." *Id.* at 464; *c.f. DeSoto v. Ellis*, 393 So. 2d 847, 849 (La. Ct. App. 1981)

13

(subvendee is subrogated to the rights of his vendor as to the warranty against eviction).

Second, because commercially sophisticated entities are held to a higher standard, the Fifth Circuit found that a subsequent purchaser was bound by its seller's waiver of redhibition. The exclusions applied to the purchaser because "[t]he language of the warranty-limitation provisions was conspicuous and should have been clear and unambiguous. [The subsequent purchaser] was on notice of the existence of the original contracts and their terms through the language in the warranty provisions of its contracts with [its seller]." *Datamatic, Inc.*, 795 F.2d at 465.

In this case, Notre Dame is subrogated to Landis' rights as against Grand Openings and Kolbe. Because Landis acted as Notre Dame's contractor in the transaction with Grand Openings, it would be patently absurd for Notre Dame to claim that it had no notice of the terms of the Purchase Order. As a commercially sophisticated entity, Notre Dame is held to a higher standard than the average consumer. Thus, Notre Dame was sufficiently aware of the Express Limited Warranty contained in the Purchase Order.

The *Datamatic* opinion similarly disposes of Notre Dame's other contentions. First, Notre Dame argues that the manufacturer's constructive knowledge of the defect defeats any attempted waiver. The Civil Code provides, "A buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller

14

has declared that the thing has a quality that he knew it did not have." La. Civ. Code art. 2548. Knowledge of defects in a product are imputed to the manufacturer, who is considered a bad faith seller. La. Civ. Code art. 2545. Thus, Notre Dame claims that Kolbe, as manufacturer of the windows, had constructive knowledge of the alleged defects, defeating its attempt to exclude the warranty against redhibitory defects. However, the Fifth Circuit rejected this argument, stating, "This equivalence, however, is suggested only in one commentary, has been rejected in another, and has never been adopted by a Louisiana court. We are unpersuaded. Although ingenious, this scheme seems to us to equate different concepts created for different purposes. *Datamatic, Inc.*, 795 F.2d at 465 (internal citations omitted). This Court is bound by the Fifth Circuit's decision on this issue.

Second, Notre Dame argues that it is subrogated to the rights of Grand Openings as against Kolbe, entitling Notre Dame to sue Kolbe directly. The Civil Code provides, "A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition. Any contractual provision that attempts to limit, diminish or prevent such recovery by a seller against the manufacturer shall have no effect." La. Civ. Code art. 2531. Notre Dame claims that it may

15

proceed directly against Kolbe because it is subrogated to the rights of Grand Openings against Kolbe. The Fifth Circuit has rejected this argument, pointing out that "article 2531 by its own terms is not applicable if the buyer's immediate seller was not held liable." *Datamatic, Inc.*, 795 F.2d at 466. Neither Landis nor Grand Openings has been held liable to Notre Dame in redhibition. Based on this binding precedent, the Court must reject Notre Dame's argument.

The only remaining issue is whether Kolbe's waiver was clear and unambiguous. The Fifth Circuit has approved of language similar to the language in Kolbe's Express Limited Warranty. Kolbe's warranty stated, "This express limited warranty is in lieu of all other warranties, express or implied. There are no implied warranties of merchantability or fitness for a particular purpose, or any other warranties that extend beyond this express limited warranty. . . . The remedies provided under this express limited warranty are exclusive and in lieu of all other remedies at law or equity." (Rec. Doc. 104-16, at 60.) In *Datamatic*, the Fifth Circuit found that similar language was sufficiently clear and unambiguous. The Circuit approved of the following language: "*The foregoing Warranties and Limitations are exclusive remedies and are in lieu of all other warranties express or implied, including but not limited to the implied warranty of merchantability.*" *Datamatic, Inc.*, 795 F.2d at 460 (emphasis in original). Thus, the

16

Court finds that the language in the Express Limited Warranty is sufficiently clear and unambiguous.

Notre Dame argues that the language of the Express Limited Warranty conflicts with the language in the Purchase Order. By its own terms, the Purchase Order warrants against defects and warrants that the product will be fit for its ordinary use. Additionally, the Purchase Order includes "any warranty . . . implied by law." The warranty of fitness and the warranty against redhibitory defects are implied by law in every sales contract. *Radalec, Inc. v. Automatic Firing Corp.*, 81 So. 2d 830, 833 (La. 1955) (warranty against redhibitory defects); *Ca. Chem. Co. v. Lovett*, 204 So. 2d 633, 636 (La. Ct. App. 1967) (warranty of fitness). However, the Express Limited Warranty clearly refers only to Kolbe, while the Purchase Order warranties refer to the "seller," named in the contract as Grand Openings. The distinction between the two entities should have been clear and unambiguous to Landis and Notre Dame.

The waivers contained in the Express Limited Warranty are valid. Thus, Landis waived all warranties with respect to Kolbe but preserved the claims as to Grand Openings. Notre Dame may maintain its contractual claims against Grand Openings but not against Kolbe. Its sole remedy against Kolbe is based on tort and violations of the LPLA.

17

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Notre Dame's *Motion for Partial Summary Judgment* is **DENIED**.

**IT IS FURTHER ORDERED** that Kolbe's *Motion for Partial Summary Judgment* is **GRANTED**.

**IT IS FURTHER ORDERED** that the oral argument set for June 1, 2016 is **CANCELED**.

**IT IS FURTHER ORDERED** that the pending Motions for Leave to File Reply **(Rec. Doc. 118; Rec. Doc. 119; Rec. Doc. 123)** are **DENIED** as moot.

New Orleans, Louisiana this 27th day of May, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE